JOHN D. GIFFIN, CASB No. 89608
john.giffin@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Respondent Shine Navigation, Ltd.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE MARINE PTE, LTD, | Case No.: 2:12-CV-2554 JAM |
| Claimant, | **IN ADMIRALTY** |
| vs. | |
| SOLYM CARRIERS (LONDON) LIMITED, AEGIS CARRIERS (A.C.E.) LTD., PRIMAL SHIPMANAGEMENT INC., SHINE NAVIGATION LTD., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION TO HEAR MOTION TO VACATE ATTACHMENT ON AN EXPEDITED BASIS AND/OR EXTEND TIME BY WHICH DEFENDANT MUST RESPOND** |
| Respondent. | |

Defendant SHINE NAVIGATION LTD. ("SHINE") submits this Memorandum of Points and Authorities in support of their *Ex Parte* Application for relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant seeks an Order from the Court vacating the attachment of the vessel M/V SIDER PINK, and to grant it security from the Plaintiff for the wrongful attachment of the vessel. In the alternative, Defendants request that the amount of

1  security demanded by the Plaintiff be set at a reasonable amount, not to exceed
2  $232,694.18.
3         Despite the fact that neither the ship M/V SIDER PINK nor its owners
4  were involved in the incidents allegedly giving rise to Plaintiff's Verified Complaint, the
5  SIDER PINK, currently loaded with 15,300.000 net metric tons of necessary food in the
6  form of rice destined for Libya, is currently being held by attachment in West
7  Sacramento for security in excess of USD $10 million. (SHINE Bill of Lading). Plaintiff
8  demands this excess security for a claim for which they have not suffered damages and
9  damages are speculative. Further, Plaintiffs waited until the SIDER PINK had been at
10 port loading cargo for one week before seeking attachment thereby severely prejudicing
11 Shine's ability to respond.
12        In light of the fact that the USD $10 million security that Plaintiff demands
13 is excessive and that the attachment is based on speculative damages, Defendants have
14 attempted to reach an agreement with Plaintiffs for a lower amount of security in order
15 to release the vessel. Plaintiff has refused to lower its demand, causing damages
16 resulting from the delayed departure of the SIDER PINK (Declaration of John Giffin).
17        Defendant has filed, contemporaneous with the Application for *ex parte*
18 Relief, a Motion to Vacate Maritime Attachment and Related Orders and Memorandum
19 of Points and Authorities in Support thereof. These documents set forth the legal bases
20 on which Defendant contends that the Attachment must be vacated, specifically that, (a)
21 Plaintiff has failed to state a claim and/or meet its burden to satisfy Rule B because it
22 cannot allege a *prima facie* claim in admiralty; and (b) Plaintiff's underlying alter ego
23 theory fails, therefore the SIDER PINK was improperly attached.
24
25 **II. SUMMARY OF RELEVANT FACTS AND PROCEDURAL BACKGROUND**
26        Plaintiff RESOURCE MARINE PTE., LTD. ("RESOURCE") is the charterer
27 of the M/V BALTIC LEOPARD. Plaintiff previously entered into a charter time charter
28 party with the owners of the BALTIC LEOPARD, Baltic Leopard Limited ("BLL"), which

is not a party to this action.

### A. PLAINTIFF'S FIRST CLAIM FOR UNPAID HIRE

On or about April 20, 2011, Plaintiff subchartered the BALTIC LEOPARD to Defendant AEGIS for a time charter for a period of 11.5 months, at the rate of $14,200 per day, payable every fifteen (15) days in advance. (Verified Complaint ("VC") ¶ 10).

Under the time charter party, Defendant AEGIS' performance was fully guaranteed by Defendant SOLYM. (VC ¶ 4).

Plaintiff alleges that Defendants AEGIS and SOLYM breached the charter party agreement by re-delivering the BALTIC LEOPARD in advance of the contractually agreed period, and that they wrongfully withheld hire. As a result, Plaintiff alleges damages of USD $232,694.18. Plaintiff alleges that Defendants AEGIS and SOLYM have refused to pay this amount, or to provide security on this amount. (VC ¶ 17, 18).

### B. PLAINTIFF'S SECOND CLAIM FOR UNSAFE BERTH

Under the time charter agreement between Plaintiff and Defendant AEGIS, the BALTIC LEOPARD was required to trade via safe berths, ports and anchorages. (VC ¶ 20).

On or about July 19, 2011, during discharge operations at the Ibeto Cement Terminal in Port Harcourt, Nigeria, wake from a passing vessel is said to have caused the BALTIC LEOPARD to lurch forward, causing damage to both the vessel and the terminal. (VC ¶ 22).

As a result of the July 19th incident, the Nigerian terminal has claimed damages against BLL, as owners of the BALTIC LEOPARD. BLL has not initiated any legal action against Plaintiffs as charterers of the BALTIC LEOPARD, and has not made any formal demands for security against Plaintiff. (Saudek Decl.).

Nonetheless, Plaintiff has demanded security from Defendants AEGIS and SOLYMN in excess of USD $10,000,000 for damages sustained to the BALTIC LEOPARD and the Nigerian dock. Plaintiff alleges that Defendants AEGIS and SOLYM have failed to pay this amount. (VC ¶ 26, 28).

### C. ATTACHMENT OF THE VESSEL AND DEMAND FOR SECURITY

As a result of damages arising from Plaintiff's Unpaid Hire and Unsafe Berth claims, Plaintiff seeks security from not only AEGIS and SOLYM, but also Defendants PRIMAL and SHINE. Plaintiff has employed an alter ego theory to reach these Defendants, despite the fact that they had no involvement in the matters giving rise to Plaintiff's claim. Under this theory, Plaintiff alleges that Defendant PRIMAL is a commercial operator for vessels beneficially owned by Mr. Nikolaos Papalios, including Defendant SHINE and the SIDER PINK. Under this tenuous alter ego theory set forth in its Verified Complaint, Plaintiff alleges that Defendants are alter egos of Mr. Papalios' group of companies. Therefore, Plaintiff argues, attachment of the SIDER PINK was proper.

Relying on this theory, on October 12, 2012, Plaintiff filed its Verified Complaint and by *ex parte* application obtained an order from this Court attaching the M/V SIDER PINK, pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

The SIDER PINK was accordingly attached in Western Sacramento on October 15, 2012. It remains attached in the Eastern District of California, despite being fully loaded with grain destined for Libya, under a demand for security in excess of USD $10 million. The cargo loaded onboard the ship is owned by ADM Rice, Inc. on behalf of Nature Plus Limited, neither of which is a party to this lawsuit and who owe nothing to the Plaintiff.

### III. LEGAL ARGUMENT

### A. INTRODUCTION

*Ex parte* applications are for extraordinary relief. Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. 1995). To be granted, an applicant must establish (1) that the moving party will be prejudiced if the underlying motion is not heard according to regular noticed motion procedures; and, (2) the moving party is without fault in creating the crises that requires ex parte relief. Id.

1  at 492. Prejudice is determined on a sliding scale—"[i]f the threatened prejudice would
2  not be severe, then it must be apparent that the underlying motion has a high likelihood
3  of success on the merits," however, "[i]f drastic harm is threatened, then it is sufficient to
4  show that there are close issue that justify the court's review before the party suffers the
5  harm." Id.

6  The Court should grant the instant *ex parte* application to consider the
7  underlying motion on an expedited basis because (a) Rule E(4)(f) provides good cause for
8  ex parte relief and the expedited hearing of the underlying motion, see FED. R. CIV. P.
9  SUPP. ADM. Rule E(4)(f); (b) irreparable prejudice would result to the SIDER PINK if the
10 regular notice procedures are followed both because it has a high likelihood of
11 succeeding on the underlying motion, and because the harm involved is drastic and
12 requires immediate consideration; and, (c) Plaintiff cannot make out a valid *prima facie*
13 admiralty claim as required under Rule B, and cannot attach the SIDER PINK based on
14 a faulty alter ego theory of liability.

15 In the event the Court disagrees with Defendants' position and the
16 attachment is not vacated, the amount of security should be reduced based on a
17 mortgage on the SIDER PINK that reduces its value.

18 **B.    *EX PARTE* MOTION TO VACATE ATTACHMENT AND RELATED**
19        **ORDERS**

20 *Grounds*: Defendants seek an issuance of an order or orders which vacate
21 the Maritime Attachment Order issued in this matter. Good Cause to grant *ex parte*
22 relief exists under Rule E(4)(f), which provides that "[w]henever property is arrested or
23 attached, any person claiming an interest in it shall be entitled to a prompt hearing at
24 which the plaintiff shall be required to show why the arrest or attachment should not be
25 vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. ADM.
26 Rule E(4)(f).

27 Here, because the underlying motion to Vacate the Attachment has a high
28 likelihood of success on the merits, Defendant and other non parties such as ADM Rice

1. and Nature Plus Limited would be irreparably prejudiced if the Court were to deny the
2. ex parte application.  See, Mission Power Engineering Co., 883 F. Supp. at 492
3. (prejudice is evidenced where there is a high likelihood of success on the merits of the
4. underlying motion).  The Attachment and Related Orders should be vacated because the
5. Plaintiff has failed to state a claim and/or meet its burden to satisfy Rule B; specifically,
6. Plaintiff's claims rest upon the theory that Plaintiff seeks indemnity from defendants,
7. when in reality no legal action against Plaintiff has been initiated and Plaintiff has not
8. paid any money to any third parties. (Saudek Decl.). Therefore, Plaintiff's claim for
9. indemnity is premature and cannot form the basis for an attachment. Additionally, the
10. alter ego theory upon which the attachment of the SIDER PINK is based, is tenuous at
11. best.

      C.     **EXTRAORDINARY RELIEF IS WARRANTED**

13. Under Rule E(4)(f) and the case law, expedited hearings are warranted
14. where a vessel has been arrested.  "[T]he arrest of a ship deprives its owner during the
15. resolution of the dispute of the unfettered use of its property not to mention any revenue
16. it may earn from leasing the vessel.  In recognition of this hardship, the party seeking to
17. arrest a vessel must carry the burden of showing why the arrest or attachment should
18. not be vacated." Marubeni Am. Corp. v. M/V Unity, 802 F. Supp 1352 (D. Md. 1992); see
19. also Aqua-Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 440 (2d Cir.
20. 2006) (due process concerns arise where the defendant (to a Rule B attachment) is
21. deprived of a prompt post-seizure opportunity to contest the validity of the seizure);
22. Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008) ("'Rule E(4)(f) is
23. designed to satisfy the constitutional requirement of due process by guaranteeing to [the
24. property owner] a prompt post-seizure hearing at which [the property owner] can attack
25. the complaint, the arrest, the security demanded, or any other alleged deficiency in the
26. proceedings.'" (citing Fed. R. Civ. P., Adm. Supp. R. E(4)(f), Advisory Committee's note to
27. 1985 Amendment)); Lion v. M/V Loretta D., 1998 WL 307077 (D.Md. April 3, 1998) ("The
28. function of the expedited post arrest hearing is to afford due process to the ship-owner

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION - Case No. 2:12-CV-2554 JAM

1  whose vessel has been arrested without pre-arrest hearing." (internal citations omitted)).
2  Thus, pursuant to Rule E(4)(f) and relevant case law, the ex parte application must be
3  granted and the underlying motion heard on an expedited basis because the subject of
4  the motion is to vacate a maritime attachment.
5        Here, Plaintiff and others will suffer irreparable hardship if the attachment
6  is not vacated.  The vessel has already sustained losses of a loss of charter hire due to
7  the attachment of the ship.  If the attachment is not lifted the vessel will remain off hire
8  and will lose at least $10,000 per day and will be exposed to damages claimed by the
9  Shipper of the cargo for failure to timely deliver the cargo. The owners of the SIDER
10  PINK have had to employ significant effort to obtain security as a fall back option which
11  might be necessary in the event the Court elects not to vacate the attachment.  The cost
12  of that security is beyond the reach of the Defendant and without requiring the Plaintiff
13  to post countersecurity in an amount which fully compensates the Defendant for all
14  losses, there is no guarantee that Defendant can recover those costs.  Further, the
15  SIDER PINK is loaded with much needed food in the form of grain destined for Libya,
16  and cannot deliver its cargo until the attachment is vacated. (SHINE Bill of Lading). The
17  shipper who has arranged to ship this grain has already threatened action if the SIDER
18  PINK's departure is further delayed. Defendants urge the Court to vacate the
19  attachment and dismiss the matter.
20        Furthermore, as the above referenced facts demonstrate, undue hardship
21  will certainly result to Defendants if the Court fails to consider the instant motion on an
22  expedited basis.  While Plaintiff has incurred very little monetary losses in pursing the
23  instant action, Defendants have and will continue to incur <u>substantial</u> losses as this
24  matter lags on.  As the above facts demonstrate, Defendants will incur at least $10,000 a
25  day in loss of charter hire and expenses.  These losses are particularly troubling given
26  that the Shine is an innocent third party to a dispute arising from an incident related to
27  the BALTIC LEOPARD in another port.   Given the nature of this dispute and the
28  commercial realities involved, the lodged Motion to Vacate the Attachment is of pressing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION - Case No. 2:12-CV-2554 JAM

urgency and must be considered in an expedited manner, or risk irreparable prejudice to Defendants.

Finally, Defendants are without fault in creating the crisis that requires that the Court hear the underlying motion on an expedited basis. The SIDER PINK is an innocent party to a dispute between Plaintiffs and Defendants AEGIS and SOLYM arising from the subcharter of the BALTIC LEOPARD. AEGIS and SOLYM have not been served and have no interest in the SIDER PINK. This court has no jurisdiction over AEGIS or SOLYM. Moreover, Plaintiff has never incurred any obligation to pay security for damages sustained to the BALTIC LEOPARD or the Nigerian port. (Saudek Decl.), Nonetheless, this Court attached the SIDER PINK, Defendant SHINE's vessel, and as a result, Defendants have suffered great losses that will continue without speedy action taken by this Court.

### D. PLAINTIFF CANNOT MEET ITS BURDEN TO SHOW THAT THE ATTACHMENT IS VALID AND SATISFIES THE REQUIREMENTS OF RULES B AND E.

"A district court *must vacate* an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) ("Aqua Stoli") (emphasis added); Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir. 2010) ("Equatorial") citing FED. R. CIV. P., SUPP. R. E(4)(f). It is well-settled that the plaintiff carries the burden to show why the attachment should not be vacated. Equatorial, 591 F.3d at 1210.[1] To satisfy this burden, the Plaintiff must

---

[1] "[T]he arrest of a ship deprives its owner during the resolution of the dispute of the unfettered use of its property not to mention any revenue it may earn from leasing the vessel. In recognition of this hardship, the party seeking to arrest a vessel must carry the burden of showing why the arrest or attachment should not be vacated." Marubeni Am. Corp. v. M/V Unity, 802 F. Supp 1352 (D. Md. 1992); see also Aqua-Stoli Shipping Ltd., 460 F.3d at 440; ("Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded,

(1) demonstrate that it has sufficiently pleaded facts supporting a valid Rule B attachment (including a valid maritime claim against the defendant) and (2) refute evidence presented at a Rule E (4)(f) hearing which contradicts the allegations in the verified complaint. Id.; Williamson v. Recovery Ltd. P'ship, 542 F.3d 43 (2d Cir. 2008)

1.  **Rule E(2)(a) requires that the Verified Complaint plead a valid maritime claim with *particularity*.**

Rule E(2)(a) of the Supplemental Rules provides that a complaint seeking a Rule B attachment "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of facts and to frame a responsive pleading." Courts uniformly require that attaching parties must strictly comply with Rule E(2)(a)'s heightened pleading standard. See Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 639 (9th Cir. 1982); Riverway Co. v. Spivey Marine & Harbor Service Co., 598 F. Supp. 909 (S.D. Ill 1984) (Rule E(2)(a)'s particularity requirement parallels that required for fraud.) Conclusory allegations and dubious claims are insufficient to set forth a claim upon which relief may be granted pursuant to Rule E(2)(a). Polar Shipping, 680 F.2d at 639. The complaint must accurately state with particularity the who, what, when, where and why of the alleged wrongful action, all facts supporting the claim, as well as, any and all facts necessary to notify the defendant of the incident in dispute and afford a reasonable belief that the claim has merit. Id.; see also Charnay v. Covert, 145 Cal. App. 4th 170, 185 n.14 (Cal. App. 2 Dist. 2006); Falkowski v. Imation Corp., 309 F.3d 1133, 1133 (9th Cir. 2002).

At the time of attachment, Rule E(2)(a)'s requirement that the complaint contain specific verified allegations operates as the sole guarantor of the defendant's due process rights. Indeed, Rule E(2)(a)'s particularity requirement "has been cited as a

---

or any other alleged deficiency in the proceedings.'" Williamson, 542 F.3d at 51 (citing FED. R. CIV. P., ADM. SUPP. R. E(4)(f), Advisory Committee's note to 1985 Amendment).

safeguard in cases upholding the special maritime remedies against due process attack." U.S. v. $39,000 in Canadian Currency, 801 F.2d 1210, 1217 (10th Cir. 1986). Courts reason that because Rule B allows the plaintiff to seize the property of another, on an *ex parte* and expedited basis, due process demands that the verified complaint meet the higher pleading burden required by Rule E(2)(a), rather than the lower standard set by Rule 8 of the Federal Rules of Civil Procedure. See Polar Shipping Ltd., 680 F.2d at 639; U.S. v. $191,910 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994) (abrogated on other grounds by statute); U.S. v. Pole No. 3172, Hopkinton, 852 F.2d 636, 638 (1st Cir. 1988) (abrogated on other grounds by statute).

Since due process is safeguarded by "Rule E(2)(a)'s requirement that a complaint state the circumstances with more particularity than is generally necessary," the integrity of the Verified Complaint furnished Defendant with its *only* due process rights *at the time of the attachment*. Canadian Currency, 801 F.2d at 1217-18. The "heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counter-balance the unique and drastic remedies that are available in *in rem* admiralty proceedings." P.R. Ports Authority v. Barge Katy-B, O.N., 427 F.3d 93, 105 (1st Cir. 2005); U.S. v. Borromeo, 945 F.2d 750, 752–53 (4th Cir. 1991); U.S. v. $38,000 in U.S. Currency, 816 F.2d 1538 (11th Cir. 1987) (abrogated on other grounds by statute).

### 2. To satisfy Rule B, Plaintiff must establish a prima facie admiralty claim.

Pursuant to Rule B, a plaintiff seeking to obtain an order of attachment must satisfy four conditions: "(1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." Equatorial, 591 F.3d at 1210; Aqua Stoli, 460 F.3d at 445; FED. R. CIV. P., SUPP. R. B.

### 3. Deficiencies in an attachment cannot be cured with after-acquired facts or evidence.

The Plaintiff must allege facts which support an attachment *at the time* the attachment orders are issued. It cannot proceed with the hope that the facts will develop to support the attachment. Where a verified complaint is legally insufficient at the time of attachment, the attachment is void and subsequent attempts to "cure" the defects are fruitless. See Equatorial Marine Fuel, 591 F.3d at 1211 (citing Williamson 542 F.3d at 52 (affirming the District Court's decision to vacate an attachment and holding that where (1) the complaint failed to plead its allegations with specificity, and (2) defendant produced evidence at the E(4)(f), those deficiencies could not be cured with later submissions)); Union Planters Nat'l Bank v. World Systems Assocs., 816 F. 2d 1092, 1098 (6th Cir. 1987); Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990).

### 4. Plaintiff has failed to state a valid *in personam* admiralty maritime claim againts defendants because its claim for indemnity is premature.

It is well established under California law that a cause of action for equitable indemnity arises only when the indemnitee actually incurs a loss by payment of the underlying claim or judgment. See U.S. Cold Storage v. Matson Navigation Co., 162 Cal. App. 3d 1228, 1231 (Cal. Ct. App. 1984).

California courts have not addressed whether a contingent claim for indemnity may give rise to a Rule B right of attachment. However, the Supreme Court of California has addressed this issue in the context of state attachment procedures. There, the court stated that a debt which is uncertain and contingent in the sense that it may never become due is not subject to garnishment. Javorek v. Superior Court of Monterey County, 17 Cal. Ed 629, 640 (Cal. 1976). Considering a claim for indemnity by an insurer, the court distinguished between cases where the amount of liability is uncertain and those where the fact of liability is uncertain, finding that the latter are not subject

to attachment. The court concluded that "there must first be a determination of the insured's liability before the insurer's obligation to indemnify matures to the extent that it becomes subject to attachment." Id.

The California Supreme Court's reasoning mirrors that of the Second Circuit Court of Appeals.

Ironically in February of this year an English lawyer practicing in Greece, acting for Shine asked Plaintiff's counsel, George Chalos, for an opinion of whether, in the U.S. Shine's vessel was subject to attachment because of the incident in Nigeria and Plaintiff's contingent liability as the charterer of the BALTIC LEOPARD. Mr. Chalos gave the opinion then that an attachment would not be warranted and noted that there is a "plethora of authority" from the Second Circuit that says that "a contingent indemnity claim [. . .] is not proper for Rule B attachment, as such claims are considered unripe." (Chalos E-mail.). Specifically, Mr. Chalos points to a case in which the Second Circuit held that, where a plaintiff has not yet incurred liability to a third party, any claim for indemnity is not ripe and cannot form the basis for a Rule B attachment. Bottiglieri Di Navigazione v. Tradeline, 2008 U.S. App. LEXIS 20028 (2d Cir. Sept. 17, 2008). That court relied in part on English law, where a claim for indemnity does not accrue until a plaintiff has actually made a payment to the third party. Id. at *37. Accordingly, the court held that the plaintiff could not establish a prima facie admiralty claim as required under Rule B based on a premature claim for indemnity. Id. Second Circuit opinions are not binding on courts in California, but they are persuasive authority and may be cited as such.

Since giving his opinion in February that an attachment would not be legal (at least in the 2d Circuit) Mr. Chalos has moved to the other side and is now arguing that in the 9th Circuit such an attachment to secure a contingent claim is proper, even though the law in the 9th Circuit is no different. Attached is a copy of the opinion provided by Mr. Chalos on February 14th, 2012.

Here, Plaintiff has based its attachment of the SIDER PINK on its

indemnification claim against Defendants AEGIS and SOLYM. This claim for indemnity is premature, so long as neither the owners of the BALTIC LROPARD nor the Nigerian dock owners have compelled the Plaintiff to pay for damages to the BALTIC LEOPARD or the Nigerian terminal. In fact while there is a lawsuit ongoing in Nigeria over the loss involving the owners of the BALTIC LEOPARD, the dock owner and the other involved ship, Plaintiff is not a party to that lawsuit and the Plaintiff has not been required to post security for those losses. (Saudek Decl.). Simply put, Plaintiff's claim for indemnity is not ripe. Plaintiff is demanding security from an innocent party on an unfounded alter ego theory when Plaintiff has not been sued and has not been asked to put up security.

Therefore, following the reasoning of both the California Supreme Court and the Second Circuit, Plaintiff cannot base its claim for attachment of the SIDER PINK on its contingent and <u>speculative</u> claim for indemnity. Because Plaintiff cannot make out a prima facie admiralty claim, the attachment must be vacated.

### 5. **Plaintiff cannot establish an "alter ego" relationship between Defendants.**

Because Plaintiff cannot establish the existence of a valid prima facie admiralty claim arising from indemnity for damages to the BALTIC LEOPARD to support its Rule B attachment, it is left to argue an <u>implausible</u> alter ego theory. Yet, the allegations contained in the Verified Complaint are wholly inadequate to support a this theory.

In truth, PRIMAL, SHINE, AEGIS and SOLYM are separate and distinct corporations. Plaintiff's allegations fall well short of satisfying the requisite factors for finding an alter ego relationship.

### 6. **"Alter Ego" Liability.**

Separate corporate formations are to be respected. As such, courts sitting in admiralty will not "disregard corporate separateness" absent a showing that the controlling corporate entity exercises "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of

its own." <u>Chan v. Society Expeditions</u>, 123 F.3d 1287, 1294 (9th Cir. 1997).

To determine whether to disregard the separate corporate existence of two corporations under an "alter ego" theory, courts consider several factors:

- common or overlapping stock ownership between the two entities;
- common or overlapping directors and officers;
- use of the same corporate offices;
- inadequate capitalization of one of the entities;
- financing of one entity by the other;
- whether one entity exists solely as a holding company of the other;
- whether there is commingling use of both entities' property;
- a lack of formality when the two entities engage in inter-corporate loan transactions;
- incorporation by one entity being caused by the other;
- filing of consolidated tax returns;
- decisions for one entity being made by the other;
- where the corporate directors of one entity act solely for the benefit of the other;
- the entering into contracts which are favorable to one entity over the other;
- the failure to observe formal legal requirements; and
- the existence of fraud, wrongdoing or injustice to third parties.

<u>Sabine Towing & Transp. Co. v. Merit Ventures Inc.</u>, 575 F. Supp. 1442, 1446-48 (E.D. Tex 1983); (listing fifteen factors for the determination of whether an alter ego exists); see also <u>Chan v. Soc'y Expeditions, Inc.</u>, 123 F.3d 1287, 1294 (9th Cir. 1997) (holding that "federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetuate fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own"). The existence of one or more of the <u>Sabine</u> factors is not

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION - Case No. 2:12-CV-2554 JAM

1  determinative of an alter ego relationship, as "[m]any relate to routine business

2  practices, followed by many companies." Sabine, 575 F. Supp. at 1448. However, "unity

3  of ownership" is required before courts will disregard the corporate form. Masterson

4  Mktg. v. Lotus Int'l, Inc., 2008 U.S. Dist. LEXIS 17696, at *32-33 (S.D. Cal. Mar. 7,

5  2008) (citing Chan, 123 F.3d at 1294).

### 7. The Verified Complaint fails to state facts sufficient to support the existence of an "alter ego" relationship as between AEGIS, SOLYM, PRIMAL and SHINE.

#### a) The Verified Complaint fails to allege facts evidencing a unity of ownership.

To state a claim for relief based upon an "alter ego" theory, the Verified Complaint must state facts evidencing a unity of ownership as between the Defendants. Masterson Mktg., 2008 U.S. Dist. LEXIS 17696, at *32-33; Chan, 123 F.3d at 1294. Here, the Verified Complaint asserts only generally that defendants are alter egos of the "Papalios group of companies." (VC ¶ 40). This conclusory allegation is afforded no weight under then heightened Rule E(2)(a) pleading standard. Polar Shipping Ltd., 680 F.2d at 639. Because the Verified Complaint fails to set forth particularized facts evidencing a "unity of ownership," it fails as a matter of law and the attachment must be vacated.

#### b) The Verified Complaint fails to plead facts to satisfy the Sabine test.

As outlined above, to state a claim based upon an "alter ego" theory of liability, the Verified Complaint must state facts with particularity supporting this theory of recovery. Yet, the Verified Complaint fails to plead specific facts that could support a finding under Sabine that there is an alter ego relationship.

The Verified Complaint does ***not*** allege (because it could not) that: (1) the Defendant companies have common or overlapping stock ownership; (2) any of Defendants are undercapitalized; (3) t hat PRIMAL or SHINE guaranteed the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION - Case No. 2:12-CV-2554 JAM

1  subcharter of the BALTIC LEOPARD; (4) any of the Defendants commingled assets;
2  (5) one company exists solely as a holding company of the other; (6) Defendants failed to
3  observe corporate formalities; (7) Defendants filed consolidated tax returns; (8) decisions
4  for any of the defendants were made by the other company; (9) any defendants engaged
5  in fraud, wrongdoing or injustice; or (10) that the parties entered into contracts that
6  were favorable to one party over the other.  Sabine, 575 F. Supp. 1442.  The notable
7  absence of any facts to support the aforementioned factors, makes clear that Plaintiff
8  has not and cannot state a claim based on an "alter ego" theory, and therefore, that
9  Plaintiff's claim is fatally flawed and the attachment should be vacated.

    **c) The facts that are alleged fail to demonstrate "total domination of the subservient corporation" such that it "manifests no separate corporate interests of its own".**

13    Corporate formalities should not be disregarded absent a showing that the
14  controlling corporate entity exercises "total domination of the subservient corporation, to
15  the extent that the subservient corporation manifests no separate corporate interests of
16  its own." Chan, 123 F.3d at 1294.  The allegations contained in the Verified Complaint
17  do not support such a finding.

18    Plaintiff alleges the following facts in support of its (misconceived) belief
19  that Defendants PRIMAL, SHINE, AEGIS or SOLYM are the "alter egos" of one
20  another:

21    •  Mr. Papalios owns Defendant SHINE, which owns the SIDER PINK
22  (VC ¶ 35);

23    •  Defendant AEGIS changed its name to Solym Carriers in June 2012, *after* the
24  events giving rise to Plaintiff's cause of action occurred. (VC ¶ 36);

25    •  Defendant SOLYM is a wholly owned subsidiary of a Liberian Company which
26  is in turn owned by Mr. Papalios (VC ¶ 37);

27    •  Defendant PRIMAL is a commercial operator of the SIDER PINK, and is
28  owned by Mr. Papalios as sole director and president. (VC ¶ 38, 39);

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION - Case No. 2:12-CV-2554 JAM

- Defendant SHINE is "believed to be" an alter ego of the Papalios group of companies (VC ¶ 40);

- Defendants SOLYM and PRIMAL have previously guaranteed the performance of Defendant AEGIS in other, unrelated transactions (VC ¶ 41).

- Defendants SOLYM and PRIMAL list the same principal business address and telephone number in unrelated performance guarantees from May 2011. (VC ¶ 43).

- Notices to Defendant SHINE are to be sent care of Defendant PRIMAL under a Mortgage Loan Agreement. Also under that agreement, Defendant PRIMAL is the corporate guarantor, and Mr. Papalios is the personal guarantor, of Defendant SHINE. (VC ¶ 47, 48).

As a matter of pleading, and even assuming that the aforementioned allegations are true, they do not support a finding that the Court should disregard the separate corporate existence of Defendants. To a person who is unfamiliar with the maritime industry, this information at <u>best</u> suggests that the companies may be part of the Papalios group of companies. They do <u>not</u> suggest that one company is dominating the other, that corporate formalities have been disregarded, or that the subservient company manifests "no separate corporate interests of its own." <u>Even if</u> the companies were related, and <u>even if</u> the companies share a common address (both of which are not in fact true), this would <u>not be sufficient to state a claim based on "alter ego," nor would it be sufficient to support a reasonable belief that the companies are in fact alter egos of each other</u>. Therefore, the Verified Complaint fails as a matter of law, and it cannot support a claim as against Defendants SHINE and PRIMAL on an alter ego theory.

        8.    **Plaintiff cannot cure the deficiency.**

Plaintiff cannot establish a claim against Defendants SHINE and PRIMAL to support an attachment of the SIDER PINK on an "alter ego" theory because the facts are clear.

E.    **THE AMOUNT OF SECURITY MUST BE REDUCED**

In the event that Court does not vacate the Attachment, the court should greatly reduce Plaintiff's security claim in light of the Vessel's mortgage obligations.

1    If security is taken by the court in lieu of attached property, Rule E(6)
2    maintains that "the court may, on motion and hearing, for *good cause shown*, reduce the
3    amount of security given." Fed. R. Civ. P. Supp. Rule E(6) (emphasis added).
4    Here, good cause exists for the Court to reduce the amount of security.
5    Plaintiff's security claim fails to account for the significant mortgage which currently
6    encumbers the vessel. The SIDER PINK is encumbered by mortgage in the amount of
7    USD $7,175,000. (Papalios Decl.). The SIDER PINK is assessed at value of $8,500,000.
8    Therefore, Plaintiff's claim can be no more than USD $1,325,000, plus the claim for USD
9    $232,694.18 resulting from the claim for unpaid hire.  Plaintiff's demand for in excess of
10   USD $10,000,000 is clearly excessive and must be reduced.

DATED:  October 17, 2012                /s/ John D. Giffin
                                        JOHN D. GIFFIN
                                        KEESAL, YOUNG & LOGAN

                                        ATTORNEYS FOR RESPONDENT SHINE
                                        NAVIGATION LTD.