CONTE C. CICALA  (State Bar No. 173554)
JEANINE STEELE TEDE (State Bar No. 177731)
FLYNN, DELICH & WISE LLP
343 Sansome Street, Suite 540
San Francisco, CA 94104
Telephone:      (415) 693-5566
Telecopier:     (415) 693-0410
Email:          contec@fdw-law.com

GEORGE M. CHALOS
*Admitted Pro Hac Vice*
CHALOS & CO, P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771
Telephone:      (516) 714-4300
Telecopier:     (516) 750-9051
Email:          gmc@chaloslaw.com

Attorneys for Plaintiff

RESOURCE MARINE PTE., LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| RESOURCE MARINE PTE., LTD. | **CASE NO.: 2:12-CV-2554-JAM** |
| Plaintiff, | **IN ADMIRALTY** |
| vs. | |
| SOLYM CARRIERS (LONDON) LIMITED f/k/a AEGIS CARRIERS (A.C.E.) LTD., PRIMAL SHIPMANAGEMENT INC., SOLYM CARRIERS LIMITED, and SHINE NAVIGATION LTD., | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE** |
| Defendants. | |

///

///

-0-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

COMES NOW, Plaintiff RESOURCE MARINE PTE., LTD. ("RESOURCE" or "Plaintiff"), by and through undersigned counsel, and submits this Memorandum of Law and the accompanying Declaration of George M. Chalos (hereinafter "Chalos Decl."), Declaration of Martin Gleeson (hereinafter "Gleeson Decl."), and Declaration of Peter Murphy (hereinafter "Murphy Decl."), in opposition to SHINE NAVIGATION LTD's ("SHINE" or "Defendant") Motion to Vacate the Rule B Attachment.  For the reasons more fully set forth below, it is respectfully submitted that SHINE's motion should be denied in its entirety.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff commenced the instant Rule B maritime attachment action on October 12, 2012, against Defendants SOLYM CARRIERS (LONDON) LIMITED f/k/a AEGIS CARRIERS (A.C.E.) LTD.'s ("AEGIS") as charterer for breach of their respective duties and obligations under the parties' charter party agreement.  *See* Original Verified Complaint ("VC"), Dkt. 1 at ¶¶ 9-30. Plaintiff has sufficiently plead a *prima facie* admiralty claim against Defendants and has sought security for its claims arising under the breach of maritime contracts in an amount of no less than USD 10,856,194.18. *Id*., at ¶ 53.   In its Verified Complaint, RESOURCE presented valid allegations that Defendants AEGIS was the corporate alter-ego of Defendants SOLYM CARRIERS LIMITED's ("SOLYM") (*i.e.* - the performance guarantor under the sub-charter party agreement), PRIMAL SHIPMANAGEMENT INC. ("PRIMAL"), and SHINE NAVIGATION LTD. ("SHINE") and set forth a valid basis for the attachment of the M/V SIDER PINK ("vessel") to serve as security for Plaintiff's claims. *Id.,* at ¶¶ 34-53.

-1-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

Magistrate Judge Hollows reviewed the application and issued an Order authorizing Process of Maritime Attachment and Garnishment that same day.  *See* Dkt. #7.  The Writ of Maritime Attachment and Garnishment was then issued by the Clerk of the Court.  *See* Dkt. #9. The Order, Process, and all supporting documents were promptly submitted by Plaintiff to the United States Marshal's Office for the Eastern District of California on the afternoon of Friday, October 12, 2012 for service upon the M/V SIDER PINK without delay.  The U.S. Marshal Service served the attachment papers on the vessel on Monday, October 15, 2012 at approximately 10:45 AM, local time.  On October 17, 2012, Defendant SHINE moved this Court for an Order vacating the Rule B attachment. *See* Dkt. 13.  For the reasons more fully set forth herein, in Plaintiff's Verified Complaint, and in the supporting declarations, Plaintiff respectfully submits that it easily has satisfied its minimal burden to sustain the attachment and that Defendant's motion to vacate must be denied in its entirety.

## POINT I

### PLAINTIFF HAS SATISFIED ITS BURDEN TO SUSTAIN THE ATTACHMENT

A.      **Background of Maritime Attachment**

Rule B of the Supplemental Rules of Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets.[1]  After a defendant has received notice of a maritime attachment, the defendant may contest it pursuant to Supplemental Rule E(4)(f). *Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d

---

[1] Rule B states in relevant part: "If a defendant is not found within the district, … a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process ….the court must review the complaint and affidavit and, if the conditions of this Rule B appear to exists, enter an order so stating and authorizing process of attachment and garnishment.  The clerk may issue supplemental process enforcing the court's order upon application without further court order." *See* Fed. R. Civ. P. Supp. R. B.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

1208, 1210 (9th Cir. Cal. 2010).

Courts in this Circuit have recognized that the procedure authorized under Supplemental Rule B has a dual purpose: (i) to assure a defendant's appearance; and (ii) to assure satisfaction in case the suit is successful. *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. Haw. 1982).   Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action.   Applying this rationale, the Ninth Circuit has stated as follows:

> A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights, as in this case, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow. It is for these reasons that maritime actions in rem, libeling a ship or other assets of a defendant, Supplemental Rule C, or attachment in actions in personam, Supplemental Rule B, were developed. These reasons are as valid today as they ever were.

*Id.*; *see also Fla. Conf. Ass'n of Seventh-Day Adventists v. Kyriakides*, 151 F. Supp. 2d 1223, 1229 (C.D. Cal. 2001)("The primary concern driving the creation of the right of attachment and garnishment was the transitory nature of maritime commerce…").   Thus, the policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found…" *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 443 (2d. Cir. 2006).[2]  "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." *Id.*  In reviewing the federal history of maritime attachment,

---

[2]  While Plaintiffs recognize that cases from the Second Circuit are not binding authority upon this Court, Plaintiffs nonetheless submit that decisions from the Second Circuit and the Southern District of New York are uniquely persuasive in view of the sheer volume of maritime attachment and arrest cases heard by those courts.  As the Second Circuit Court of Appeals noted in *The Shipping Corporation of India v. Jaldhi Overseas Pte. Ltd.*, "from October 1, 2008 to January 31, 2009 alone, maritime plaintiffs filed 962 lawsuits seeking to attach a total of $1.35 billion.  These lawsuits constituted 33% of all lawsuits filed in the Southern District." *The Shipping Corporation of India v. Jaldhi Overseas Pte. Ltd.,* 585 F.3d 58, 62 (2d Cir. 2009).

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

-3-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

District Judge Kaplan of the U.S. District Court for the Southern District of New York explained that without the centuries old remedy of maritime attachment, "***defendants, their ships, and their funds easily could evade the enforcement of substantive rights of admiralty law***." *Yayasan Sabah Dua Shipping SDN BHB v. Scandinavian Liquid Carriers, Ltd.*, 335 F. Supp. 2d 441, 444 (S.D.N.Y. 2004) (Kaplan, J.). (emphasis added); *see also Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F. Supp. 1459, 1462 (S.D. Tex. 1983))("Because the perpetrators of maritime injury are likely to be peripatetic . . . jurisdiction by attachment of property should be accorded special deference in the admiralty context" and accordingly, "maritime actors must reasonably expect to be sued where their property may be found.")(quoting *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648 (2d Cir. 1979)).

**B.**      **Plaintiff need only demonstrate Reasonable Grounds for the Attachment**.

It is common ground between the parties that the proper standard that governs a Court's decision in reviewing an order of attachment at a Rule E (4)(f) hearing, where a defendant seeks to vacate the order of attachment, is as follows:

> Under Rule B of the Supplemental Admiralty Rules, Plaintiff may attach a defendant's property if four conditions are met.  (1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.

*Equatorial Marine*, 591 F.3d at 1210, (citing *Aqua Stoli Shipping*, 460 F.3d at 474).

It is also common ground between the parties that at a Rule E(4)(f) hearing, the plaintiff bears the burden of  showing that he has satisfied the requirements of Rule B. *Id.* (*citing* FED. R. CIV. P. SUPP. R. E(4)(f)).   The federal courts, including courts in this Circuit, have consistently held that, in a Rule E, post-seizure hearing, plaintiff need only demonstrate reasonable grounds for the attachment.  "The purpose of a Rule E(4)(f) hearing is not to 'resolve definitively the dispute

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

-4-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

between the parties, but only to make a preliminary determination whether there were reasonable grounds' for the attachment." *KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751, 4-5 (N.D. Cal. 2012) (citing *Del Mar Seafoods, Inc. v. Cohen*, 2007 U.S. Dist. LEXIS 64426, at *3 (N.D. Cal. 2007) (quoting *Lion de Mer v. M/V Loretta V*, 1998 U.S. Dist. LEXIS 10182, at * 2 (D. Md. 1998)).[3]

Plaintiff is <u>not</u> required to prove its case at the E(4)(f) stage; rather, the purpose of the hearing is only to determine whether reasonable grounds existed for the issuance of the writ of attachment (and for continued maintenance of the attachment). *See e.g.*, *Naftomar Shipping and Trading Co. v. KMA Int'l. S.A.*, 2011 U.S. Dist. LEXIS 24723, at *2 (S.D. Tex. 2011); *Rea Navigation, Inc. v. World Wide Shipping Ltd.*, 2009 U.S. Dist. LEXIS 96113, at *2 (S.D.N.Y. 2009) (noting that neither reasonable grounds or probable cause standards to evaluate a showing of a valid *prima facie* admiralty claim requires the plaintiff to prove its case at the Supplemental Rule E(4)(f) stage); *Vinmar International Ltd. v. M/T CLIPPER MAKISHIO*, 2009 U.S. Dist. LEXIS 127956 * 2, 2010 AMC 1184 (S.D. Tex. 2009); *Wajilam Exports (Singapore) v. Atl Shipping*, 475 F.Supp.2d 275, 279 (S.D.N.Y. 2006); *North of England Protecting and Indem. Ass'n v. M/V Nara*, 1999 U.S. Dist. LEXIS 22375, at *2 (E.D. La. 1999).

Many other Courts have held that all that is required at an E(4)(f) stage is the application of a *prima facie* standard, *i.e.* whether Plaintiff has pled a '*prima facie*' admiralty claim. *See Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 525-26 (S.D.N.Y. 2008) ("The majority of courts in the Southern District of New York have held that in assessing whether

---

[3] At most, Courts have held that Plaintiff show "probable cause" for the attachment. *Kite Shipping LLC v. San Juan Navigation Corp.*, 2012 U.S. Dist. LEXIS 96199, at * 14-15 (S.D. Cal. 2012) ("The plaintiff need not prove its case at a Rule E(4)(f) hearing; rather, the plaintiff only needs to show "probable cause" for the issuance of the warrant or writ (*i.e.* that the plaintiff is 'reasonably likely to prevail' on the merits of the contested issue).")(citing *OS Shipping Co. Ltd. v. Global Mar. Trust(S) Private Ltd.*, 2011 U.S. Dist. LEXIS 49054, at *5 (D. Or. 2011)); *see also Sea Prestigio, LLC v. M/Y Triton*, 2010 U.S. Dist. LEXIS 135377, *8 (S.D. Cal. 2010) (applying probable cause standard).

-5-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

plaintiff has made out a 'prima facie admiralty claim' as *Aqua Stoli*. requires, courts should apply a prima facie standard rather than the more demanding 'reasonable grounds' or 'fairly probable' standard."); *see also Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008); *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, 2008 U.S. Dist. LEXIS 48688, at **3-4 (S.D.N.Y. 2008); *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 2007 U.S. Dist. LEXIS 18562, at *3 (S.D.N.Y. 2007) (applying prima facie standard for determining alter ego allegations); *Trade Group N.V. v. 6,785 MT of Cement*, 2005 U.S. Dist. LEXIS 43060, *7 (S.D. Tex. 2005) (Wherein District Judge Rosenthal noted that plaintiff is only required "to make a *prima facie* showing it is entitled to damages sought and secured by the arrest and attachment.").

## C.  Plaintiff has met (and exceeded) the pleading requirements of Rule E(2)(a)

Plaintiff's good faith allegations against Defendants in its Original Verified Complaint satisfy the particularity pleading requirement of Supplemental Rule E(2)(a) and are sufficient to sustain the attachment. *See VC, Dkt. #1, ¶¶ 9-30. The *prima facie* standard in the Supplemental Rule B maritime attachment context is a pleading requirement, not an evidentiary standard. To plead a valid *prima facie* admiralty claim, Supplemental Rule E(2)(a) requires that a complaint ". . . state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. E(2)(a). By the very content of the Defendant's Motion to Vacate and the documents relied upon by SHINE in support of same; it is evident that Plaintiff has met the heightened pleading requirements of Rule E(2)(a).

Even though Plaintiff has met the pleading standard, there is no requirement that all allegations in support of the attachment must be made at the time the Order of Attachment is issued. When conducting a review to determine whether reasonable grounds exist to sustain the

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

attachment, "Supplemental Rule E *does not restrict review* to the adequacy of the allegations in the complaint." *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.,* 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001) (emphasis added); *see also Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 279 (SDNY 2006); *Maersk, Inc. v. Neewra, Inc.,* 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006). A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing. *Linea Naviera De Cabotaje, C.A.,* 169 F. Supp. 2d at 1357-58. Presentation of additional evidence in support of claims *that have already been asserted* is wholly acceptable in order to sustain a Rule B attachment. *See KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751, *9 (N.D. Cal. 2012)("On a Rule E(4)(f) motion, however, courts generally consider additional evidence supplied by the plaintiff to support its existing claims. '[I]t comports with due process to permit the initial seizure on sworn ex parte documents, followed by the early opportunity to put the creditor to his proof.' *Equatorial*, 591 F.3d at 1210-1211 (quoting *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 609, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974)).").

**D.      Plaintiff's Admiralty Claims are Ripe**

Plaintiff's claims for breach of the charter party agreement consist of two (2) components. The first claim arises out of Defendant AEGIS' early redelivery of the vessel and the unpaid hire due and owing to Plaintiff as a result of the breach of the maritime contract. *See* VC, Dkt. #1, at ¶¶ 9-18; Gleeson Decl. at ¶¶ 5-10.[4]  The second aspect of Plaintiff's claim arises from damages sustained to the Ibeto Cement Terminal and MV BALTIC LEOPARD at Port Harcourt, Nigeria as a result of the vessel's shift against its moorings during cargo operations at the berth. *See* Gleeson Decl. at ¶¶ 11-12. Head owners of the vessel, Baltic Leopard Limited ("BLL") have claimed both

---

[4] Defendant does not dispute that a claim for unpaid hire is a valid maritime claim. *See* Dkt. #13.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

the terminal to be an unsafe berth and Port Harcourt, Nigeria to be an unsafe port for the M/V BALTIC LEOPARD in breach of the express terms and conditions of the head charter party and seek to hold Plaintiff RESOURCE liable for their loss and damage under the head charter party. *Id.*, at ¶¶ 13-18.

Pursuant to the terms and conditions of the sub-charter party agreement, Plaintiff is entitled to demand Defendants to post security for the alleged damages sustained to the vessel and terminal. *Id.*, at ¶¶ 13-19; *see also* Murphy Decl. ¶¶ 10-26.  Plaintiff has made due demand upon Defendants to post security for the claims for damages arising out of the unsafe port/ unsafe berth claims under the relevant back-to-back charter party agreements. *See* Murphy Decl. ¶¶ 19-20, Exhibits D-F.

   i)   *The claim for security is ripe under the Charter Party*

Where the demand for security for damages is based upon the breach of back-to-back charter party agreements, as here, Courts have held that Plaintiff may obtain security under Supplemental Rule B.  *See Daeshin Shipping Co., Ltd., v. Meridian Bulk Carriers, Ltd.*, 2005 U.S. Dist. LEXIS 22409, *8 (S.D.N.Y. 2005) ("after reviewing the record, we find that it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability totaling USD 350,000.00"); *see also Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 Supp. 189 (S.D.N.Y. 1987) (District Court sustained attachment.  Specifically holding that the vessel owner's "concerns are reasonable and that he is entitled to the security which he seeks.").  Plaintiff's attachment for security is proper as the claim for breach the charter party accrues and ripens, as a matter of English law (*i.e.* – the governing law of the maritime contract) at the time when the breach of the contract takes place.  *See* Murphy Decl., ¶¶ 21-26; *cf. Bottiglieri di Navigazione SpA*

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

*v. Tradeline LLC*, 293 Fed. Appx. 36, 37 (2d Cir. N.Y. 2008) (where the Second Circuit Court of Appeals affirmed the District Court's vacatur of a Rule B attachment on the basis that "under English law, a claim for indemnity does not accrue until a plaintiff has actually made a payment to the third party.").  In this matter, RESOURCE's maritime attachment is to obtain security for a breach of the underlying sub-charter party agreement, not a claim for indemnity.  *See* Murphy Decl. ¶¶ 21-26.

  *ii)* <u>The District Court has Equitable Power to Maintain the Attachment</u>

  Notwithstanding, the U.S. District Courts also have equitable power to maintain a maritime attachment as necessary to secure a claim which otherwise might be deemed "premature." As set forth in the Gleeson Decl., and Murphy Decl., BLL, as head owners of the vessel, have demanded security from RESOURCE and have asserted claims for breach of the head charter party agreement.  *See* Gleeson Decl., ¶¶ 12-18; Murphy Decl., ¶¶ 13-17, and Exhibits B-C thereto. Plaintiff therefore has a reasonable concern that it will incur actual liability from head owners and as such Rule B maritime attachment is necessary in order to secure RESOURCE's claims against AEGIS under the sub-charter party agreement. *Id.*  As such, this Honorable Court may exercise its equitable power and sustain the maritime attachment.

  In *Hibiscus Shipping, Ltd. v. Novel Commodities S.A.*, District Judge Berman held that a plaintiff was entitled to seek and sustain its security even where no suit had been instituted; finding that a "claim letter" is sufficient evidence of a claim pursuant to Fed. R. Civ. P. Rule 9(h) and Supplemental Rule B.  2004 U.S. Dist. LEXIS 30328, *3-4 (S.D.N.Y. 2004).  Judge Berman held:

> In a maritime case involving an *in rem* attachment, the United States Court of Appeals for the Second Circuit has stated that "a district court *may* in some circumstances disregard the prematurity of a plaintiff's claim as a matter of

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

-9-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

discretion . . . ." *Patricia Hayes Associates, Inc. v. Cammell Laird Holdings U.K.,* 339 F.3d 76, 82-3 (2d Cir. 2003) . . . '[i]t is settled that a suit *may sometimes* be brought in admiralty before the cause of action accrues . . .'" *Id.* at 83 (citing *The Lassell,* 193 F.539 (E.D.Pa. 1912)). A district court sitting in admiralty may disregard the prematurity of a plaintiff's claim based on considerations of equity, though such circumstances are "few" and "isolated." *Greenwich Marine, Inc. v. S.S. Alexandra,* 339 F.2d 901, 905 (2d Cir. 1965). **In this case, the claim letter is sufficient evidence of a claim pursuant to Fed. R. Civ. P. Rule 9(h) and Supplemental Admiralty Rule B and vacature is not warranted at this time**.

*Id.* (emphasis added); *see also In re Murmansk Shipping Co.*, 2001 U.S. Dist. LEXIS 25227, *10-12 (E.D. La. 2001) (Sustaining attachment on basis that the District Court has equitable power to permit attachments to secure premature claims and finding attachment appropriate where a claim has been asserted against the Rule B Plaintiff by another party).

Here it is respectfully submitted that this Honorable Court should follow the precedent of Judge Berman. As with all of the cases relied upon by Plaintiff, Defendant AEGIS cannot argue that any scenarios where its liability to RESOURCE will never arise. In sum, Plaintiff RESOURCE has a valid *prima facie* claim under the sub-charter party agreement for Defendants to post security. Plaintiff has met its "reasonable grounds" burden for the maritime attachment in this matter and it is respectfully submitted that the district court should find that it is equitable to maintain the attachment.

**E.     Defendant's Reliance on a Privileged E-mail Correspondence is Improper and Inapplicable**

The representations by SHINE's counsel in this matter are incorrect and the inclusion of the February 14, 2012 exchange from undersigned counsel marked "PRIVILEGED AND CONFIDENTIAL", is misleading at best, and at worst, intellectually dishonest. *See* Chalos Decl. ¶¶ 5-6. For the Court's reference, the inquiry was not presented on behalf of SHINE (seeking to shield itself from attachment) (*See* Dkt. 13, p. 12); but was actually an inquiry on behalf of AEGIS

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

and/or SOLYM, without any mention of SHINE or the M/V SIDER PINK.[5]   Furthermore, the inquiry was presented with facts and circumstances dissimilar to those present in the instant Rule B attachment.    Despite SHINE's inappropriate attempts to attack Plaintiff's counsel, it must be noted that Plaintiff did cite to the Court contrary authority where appropriate. *See* Motion for Order Authorizing Process of Maritime Attachment and Garnishment, Dkt. #2, p. 4 at fn.1. Notably, SHINE has failed to do the same in its submissions to this Honorable Court.

**F.      Plaintiff's alter-ego allegations and the Supporting Evidence Known to Date are More than Sufficient to Maintain the Attachment**

Defendant SHINE's second challenge to the attachment is that it is a separate and distinct corporate entity from Defendants AEGIS, SOLYM, and PRIMAL, and that "Plaintiff cannot establish an 'alter ego' relationship between the Defendants."  *See* Dkt. #13, pp. 13 – 17.    Under Defendant SHINE's self-serving analysis of what is required at the E(4)(f) review stage, Defendant asserts that since the alter-ego allegations are "tenuous", the M/V SIDER PINK cannot serve as security for Plaintiff's claims. *Id.*  Not only is SHINE's analysis of the standard of review for alter-ego allegations off the mark, but SHINE conveniently ignores the plethora of fact based allegations and documents that Plaintiff has provided to this Court showing the corporate interrelatedness  of all of the Defendants and their disregard for corporate formalities.  *See* VC, Dkt. #1, ¶¶ 32-47.

Federal courts sitting in admiralty "generally apply federal common law when examining corporate identity." *Chan v. Society Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997); *see also KPI Bridge Oil Sing. PTE Ltd.*, 2012 U.S. Dist. LEXIS 37751, *6.  Piercing of the corporate veil

---

[5] It is respectfully submitted that the submission of misleading correspondence by Defendant SHINE, which was actually obtained for and on behalf of other entities within the Defendants' corporate alter-ego structure, further supports Plaintiff's allegations and belief that the Defendants are alter-egos. *See* Point I (F), *infra*.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

is appropriate in two (2) circumstances: (i) where the parent company used the corporate entity to perpetrate fraud; _or_ (ii) where the parent has so dominated and disregarded the corporate entity's form that the entity transacted the parent's business rather than its own.[6] *Chan v. Society Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997)(*citing Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980)).  Although the *Chan* test sets forth the circumstances under which a court may pierce the corporate veil, the Ninth Circuit Court of Appeals has not mandated factors which must be present.  *See KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751 (N.D. Cal. Mar. 20, 2012) ("Our court of appeals has not set out which factors must be present to warrant piercing the corporate veil.").

Rather, the case law is clear that there is <u>no</u> mechanistic formula which applies to the alter-ego analysis and there are <u>no</u> minimum numbers of factors that must be satisfied. *United States v. Standard Beauty Supply Stores*, Inc., 561 F.2d 774, 777 (9th Cir. Cal. 1977)("Issues of *alter ego* do not lend themselves to strict rules and *prima facie* cases. Whether the corporate veil should be pierced depends on the innumerable individual equities of each case. 'Only general rules may be laid down for guidance.'"); *see also FMC Finance Corp. v. Murphree*, 632 F.2d 413, 422 (5th Cir. 1980) ("Because the doctrine is essentially equitable in character, the conditions under which a corporate entity may be disregarded vary, depending upon the circumstances in each case. ***It is therefore inappropriate to attempt to apply any verbalization of the test in a mechanical manner***.")(internal citations omitted) (emphasis added).

In determining whether an entity dominates and controls its alleged alter-ego, federal courts consider many factors including the following:

---

[6] The court in *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, 2011 U.S. Dist. LEXIS 49054, *15 (D. Or. May 6, 2011) emphasized that the test set forth in *Chan* is disjunctive.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

(1) disregard of corporate formalities;

(2) inadequate capitalization;

(3) intermingling of funds;

(4) overlap in ownership, officers, directors, and personnel;

(5) common office space, address and telephone numbers of corporate entities;

(6) the degree of discretion shown by the allegedly dominated corporation;

(7) whether the dealings between the entities are at arms length;

(8) whether the corporations are treated as independent profit centers;

(9) payment or guarantee of the corporation's debts by the dominating entity, and

(10) intermingling of property between the entities.

*See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *Classic Maritime Inc. v. Limbungan Makmur Sdn Bhd*, 646 F.Supp.2d 364, 371 (S.D.N.Y. 2009).[7]

Notwithstanding Defendant SHINE's assertions of the Defendants' separate incorporation, the Defendants are in actual fact a single business entity and alter-egos that are dominated and controlled by one another for the ultimate benefit of Mr. Nikolaos Papalios. A review of many of the factors which federal courts sitting in admiralty review in assessing whether Plaintiff has set forth a *prima facia* (or even reasonable grounds) basis for the attachment on a theory of alter-ego evinces Plaintiff has met the burden to sustain the attachment of the M/V SIDER PINK and

---

[7] Similarly, the Fifth Circuit has established the following factors to be weighed by its courts: "(1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 415 (5th Cir. 2006). The court then referenced three more private law factors: "(1) whether the directors of the `subsidiary' act in the primary and independent interest of the `parent'; (2) whether others pay or guarantee debts of the dominated corporation; and (3) whether the alleged dominator deals with the dominated corporation at arm's length." *Id.*

---

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

exposes the complete disregard of corporate formality and alter-ego relationship between Defendants SHINE, SOLYM, PRIMAL, and AEGIS.

- **Common or overlapping stock ownership.**

Mr. Papalios is the primary beneficial owner and shareholder of all of the Defendants.  He is the beneficial owner of the M/V SIDER PINK through SHINE.  *See* Verified Complaint, Dkt. 1, Exhibit 4 and Exhibit 12 (personal guarantee of the vessel mortgage Master Agreement). Defendant AEGIS is wholly owned and dominated by Mr. Papalios as the company's only shareholder.  *See* Dkt. 1, Exhibit 5 (sole holder of the company's two ordinary shares).  Defendant SOLYM is also owned, dominated, and controlled by Mr. Papalios (as the sole shareholder) of the parent Liberian company, of SOLYM, Frantic Maritime Inc.  *Id.*, Exhibit 6.  Finally, Defendant PRIMAL is another Liberian company that is owned in its entirety by Mr. Papalios. *Id.*, Exhibit 8. (sole shareholder).  *See e.g. Budisukma Permai Sdn v. N.M.K. Products & Agencies,* 606 F.Supp.2d 391, 399 (S.D.N.Y. 2009)(alter ego defendants closely owned and directed by the same group of people).

- **Common officers, directors, and personnel**

Mr. Papalios is also the overlapping officer and director of all of the Defendants.  In his declaration submitted in support of the Motion to Vacate, Mr. Papalios identifies himself as a "Director of Shine Navigation, Ltd."  *See* Dkt. 13-1, p. 7.  According to documents filed with the English registry, Mr. Papalios is the Secretary and sole director of Defendant AEGIS.  *See* Dkt. 1, Exhibit 5.  Similarly, PRIMAL is subject to Mr. Papalios' complete control as the sole director and president of that company.  *Id.*, Exhibit 8.  In filings with the Liberian Ministry of Foreign Affairs, Mr. Papalios identified himself as the "sole shareholder" of PRIMAL, "the sole Director" on the Board of Directors, and the "President" of the company.  *Id.*, at Certificate of Incumbency.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

Several decisions in the context of maritime attachment and garnishment under Rule B, holding that overlapping ownership, officers, directors, and personnel are <u>significant</u> factors to be taken into account in undertaking a corporate veil piercing enquiry. *See Classic Maritime Inc. v. Limbungan Makmur Sdn Bhd,* 646 F.Supp.2d 364, 370-371 (S.D.N.Y. 2009)(overlap in officers and directors).

- **<u>Disregard of Corporate Formalities</u>**

Mr. Papalios is the primary director, shareholder, and owner of the Defendants. Defendant SHINE, the named beneficial owner of the vessel, does not have an office, a corporate website, contact email, or any other identifying characteristics. In fact, SHINE's only asset appears to be the MV SIDER PINK and all of the vessel's business is actually performed by Defendant PRIMAL as the commercial operator of the vessel. *See* VC Dkt. # 1, Exhibit 7; *see also* VC Dkt. # 1, Exhibit 10, p. 16 (Pursuant to Mortgage Agreement between the lending bank and Defendant SHINE, Defendant PRIMAL is required to serve as commercial/technical manager of the M/V SIDER PINK.). PRIMAL exclusively manages Mr. Papalios' vessels. *See* VC Dkt. # 1, Exhibit 7.

- **<u>Use of Same Corporate Office</u>**

SOLYM and PRIMAL on their purportedly separate company letterhead, list the same principal business address and telephone number, *i.e.* 91 Papanastasiou Street, 185 33, Kastella, Greece, tel: (+30) 210 412 7777. *See* VC, Dkt. 1, Exhibits 2 and 9. Similarly, the "under construction" website of Defendants SOLYM and AEGIS list the same primary contact address. See www.solymcarriers.gr, attached as Exhibit A, to the Chalos Declaration. Furthermore, although SHINE is a Liberian company, all registered documents with respect to the vessel's mortgage and loan facility are all sent care of Defendant PRIMAL at the principal place of business at: 91 Papanastasiou Street, 185 33, Kastella, Greece. The sharing of the same business

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

address has been held to be, along with other criteria, sufficient to provide reasonable grounds to support alter ego liability. *Classic Maritime Inc. v. Limbungan Makmur Sdn Bhd*, 646 F.Supp.2d 364, 371 (S.D.N.Y. 2009).

- **Intercorporate Dealings and Failure to Conduct Arms-Length Transactions**

Defendants SOLYM and PRIMAL appear to have routinely guaranteed the performance and obligations of AEGIS under various charter party agreements.  *See* Gleeson Decl. ¶¶ 8-9. Both performance guarantees, issued by SOLYM and PRIMAL on their respective company letterhead, list the same principal business address and telephone number, *i.e.* 91 Papanastasiou Street, 185 33, Kastella, Greece, tel: (+30) 210 412 7777.  Furthermore, The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the mortgage for the M/V SIDER PINK, which further connects the Defendants and establishes a failure to conduct arms-length transactions by Mr. Nikolaos Papalios' dominated companies. *See* VC, Dkt. #1, Exhibit 10.   Under the terms of the Mortgage Agreement between the lending bank and Defendant SHINE, Defendant PRIMAL is required to serve as commercial/technical manager of the M/V SIDER PINK.  *Id.*, at pg. 16.

The Mortgage Agreement was signed in connection with a Loan Agreement between Defendant SHINE and a co-borrower and a lending bank, an agent, a security agent and a swap provider, in relation to which Defendant SHINE, its co-borrower and the swap provider, also entered into an ISDA Master Agreement. *See* VC, Dkt. 1, Exhibit 10-12, respectively.  Under the Loan Agreement, all notices to SHINE are to be sent care of Defendant PRIMAL at its principal place of business in Greece and the same applies under the Master Agreement. See Exhibit 11 at pg. 58 and Exhibit 12 at Part 4(a).  In addition, the Master Agreement defines PRIMAL as the corporate guarantor and Mr. Nikolaos Papalios as the personal guarantor for Defendant SHINE.

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

*See* Schedule to the Master Agreement at Part 4(g).

As demonstrated above, there is clearly a comingling of assets, management personnel, ownership, and officers among Defendants. While the companies may appear to be separate on paper, Plaintiff has presented an undeniable *prima facia* claim and reasonable grounds for its attachment of the M/V SIDER PINK on the basis that the Defendants are alter-egos subject to the complete domination and control of Mr. Nikolaos Papalios. Despite Defendant SHINE's desperate allegations that Plaintiff must prove all of its alter-ego allegations and/or have all of the information regarding the web of sham corporations created by Defendants, that is not the standard of review and this Honorable Court should reject such arguments and sustain the attachment. *See Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 530-531 (S.D.N.Y. 2006) ("Taken together, the Complaint and Plaintiffs' extrinsic allegations describe an international web of suspect corporations and individual actors who employ tacit alliances and shifting identities as the primary tools of their malfeasance. In a case such as this, the Court will not permit [movant] to employ those same tools to escape the attachment presently in dispute.").

When reviewing alter-ego allegations, a Plaintiff cannot be expected to obtain all evidence to support its allegations, where the Defendants are privately held corporations that have intentionally incorporated in offshore jurisdictions with limited disclosure requirements, in a manner which would make tracking them down difficult for creditors. As set forth above, Plaintiff is not required to prove its case at the Rule E(4)(f) proceeding, especially in the context of an alter ego attachment where discovery has not yet been had. *See Japan Line, Ltd. v. Willco Oil Ltd.*, 424 F. Supp. 1092, 1094 (D. Conn. 1976) (Newman, J.) (holding that where attachment is based on a fraud theory of veil-piercing, plaintiff should not be required to allege fraud with particularity before discovery); *Sea-Terminals, Inc. v. Independent Container Line, Ltd.*, Civ. A. No. 89-412-JRR, 1989 WL 222634, at *2

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

(D. Del. 1989)(holding that whether the defendant "is a totally separate and unrelated company" from the company directly liable to plaintiff should not be decided "until the facts are fully fleshed out after discovery."); *see also Fesco Ocean Mgmt. v. High Seas Shipping Ltd.*, 2007 U.S. Dist. LEXIS 19970, *9 (S.D.N.Y. 2007)("plaintiff should not be required to prove its case in order to defeat a motion to vacate - discovery has not been had and ***it would defeat the purpose of a Rule B maritime attachment to require a plaintiff asserting a valid prima facie maritime claim to prove that the facts in the complaint are true***) (internal citations omitted) (emphasis added). As more fully set forth in Point II below, in the event the Court is inclined to grant Defendants' motion to vacate, Plaintiff requests an opportunity to conduct limited discovery regarding the relationship between the Defendants.

## POINT II

### IN THE EVENT THIS HONORABLE COURT HAS DOUBT ABOUT MAINTAINING THE ATTACHMENT, PLAINTIFF REQUESTS AN OPPORTUNITY TO CONDUCT LIMITED DISCOVERY BEFORE THE SECURITY IS RELEASED

In the event that this Honorable Court may be inclined to vacate or modify the attachment, Plaintiff respectfully submits limited discovery regarding the relationship between the Defendants should be permitted. In *Interpool, Ltd. v. Char Yigh Marine, S.A.*, 890 F.2d 1453, 1457 (9th Cir. Cal. 1989), the Ninth Circuit held: "The Supreme Court has held that admiralty jurisdiction further extends to the determination of ownership of an attached vessel even if that determination involves the court in the examination of transactions that are 'intrinsically nonmaritime.'" For issues unrelated to the merits of the dispute, "pretrial discovery procedures are not necessarily precluded and there is authority to permit such discovery to go forward." *Filia Compania Naviera, S.A. v. Petroship, S.A.*, 1982 U.S. Dist. LEXIS 9404, *15 (S.D.N.Y. 1982) (*citing Nederlandse Erts Tanker-smaatschappij, N.V. v. Isbrandsten Co.*, 362 F.2d 205, 206 (2d Cir. 1966)).

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

-18-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

Courts in this Circuit have specifically allowed for specific jurisdictional discovery with respect to alter-ego allegations. In *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 Fed. Appx. 651 (9th Cir. Cal. 2010), the Ninth Circuit held that discovery limited to specific alter-ego issues was appropriate, and determined that the district court erred in granting the motion to dismiss and ruling on an incomplete record. Prevailing Ninth Circuit law provides that the party seeking discovery "bears the burden of showing that the denial of discovery results in actual and substantial prejudice to it." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. Cal. 2008). In *Twentieth Century Fox*, the Ninth Circuit focused on the following two (2) points in concluding that plaintiff sufficiently demonstrated that the denial of discovery would result in prejudice: (i) plaintiff's representations of the discovery sought was specific; and (ii) plaintiff's allegations, if supported by evidence, would "provide a strong argument for the exercise of jurisdiction over [the alleged alter ego]." *Twentieth Century*, at 653.

Plaintiff has alleged that Defendants have engaged in a pattern of corporate entanglement and sham structures in order to shield their actual assets and avoid liability to creditors, including Plaintiff. For this reason, it is critical that Plaintiff be permitted to conduct discovery regarding the relationship between the Defendants. Particularly with respect to alter-ego allegations, a plaintiff cannot be expected to obtain all evidence to support its allegations, where the Defendants have structured their corporate form so as to shield themselves from creditors. The *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.* (Dist. Ct of Oregon – 11-377-BR) case is instructive. *See* Chalos Decl. ¶ 3, Ex. B. In *OS Shipping Co.*, following an initial Rule E(4)(f) hearing, Judge Brown of the District of Oregon stated as follows:

> The plaintiff is hampered because the plaintiff can only know so much, given the
> posture of the case. And it may seem -- it may be fair to give them a brief
> opportunity to in fact inquire under oath of those declarants on whom you're

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

relying and to ask questions about the pertinent issue, which is the elements of alter ego liability and what -- what might relate to that.

*Id.* Following discovery in that case, including the depositions of the defendants' corporate representatives, the attachment was again sustained by Judge Brown, who found that the plaintiff had presented sufficient evidence to sustain the attachment on either a theory of domination and control by one defendant over the others or on the basis that defendants had engaged in fraud in their debt avoidance efforts. *See OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, 2011 U.S. Dist. LEXIS 49054, *25-33 (D. Or. May 6, 2011).

Furthermore, District Judge Alsup (of the Northern District of California) recently issued an Order holding defendants' motions to vacate a maritime attachment in abeyance pending jurisdictional discovery. *KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751 (N.D. Cal. 2012).  In that matter, plaintiff alleged, in relevant part, that one defendant controlled the other and that the defendants failed to maintain corporate formalities. *Id.* In allowing limited jurisdictional discovery, Judge Alsup held as follows:

> Plaintiff seeks leave to conduct limited discovery into the relationship between Marina and Berlian, to support its alter ego allegations. Our court of appeals has held that, in general, "where further discovery on [the] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction," denial of jurisdictional discovery will be an abuse of discretion. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Without ruling on defendants' evidentiary objections, this order finds cause to allow limited jurisdictional discovery on the issue of defendants' alleged alter ego relationship.
> …
> Plaintiff is not tasked, at this stage, with proving the merits of its claims, but rather their sufficiency. Absent express direction to the contrary, there is no reason to restrict the discretionary grant of limited jurisdictional discovery on the facts presented here.

*Id.*, at 11-14.; *see also Kite Shipping LLC v. San Juan Navigation Corp.*, 2012 U.S. Dist. LEXIS 96199, 19-21 (S.D. Cal. 2012) (District Judge Moskowitz held Magistrate Gallo's denial of

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

plaintiff's request for limited discovery on plaintiff's alter-ego theory was an abuse of discretion and granted expedited jurisdictional discovery on the alter-ego allegations).

In the context of Rule B maritime attachment cases around the United States, it has become common practice for courts to permit limited discovery where factual findings must be made in deciding a motion to vacate. *See e.g. Naftomar Shipping and Trading Co. Ltd. v. KMA International S.A.*, 2011 U.S. Dist. LEXIS 24723 (S.D. Tex. 2011) (Court denied motion to vacate and granted opportunity to conduct discovery on basis that plaintiff plead sufficient facts and offered sufficient evidence of alter-ego allegations); *Rea Navigation, Inc v. World Wide Shipping Ltd.*, 2010 AMC 221 (S.D.N.Y. 2009) (the court held that plaintiffs pled sufficient facts to sustain the attachment where plaintiffs alleged that the purported alter ego shared an address, phone number, contact information, and staff with the defendant, and made payments on behalf of the defendant, and allowed for limited discovery on the alter ego issue "in order to ensure that the Alter Ego Defendants' funds are not attached longer than necessary."); s*ee also Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted in respect to allegation that assets owned by one corporation should in fact be considered an asset of a related corporation); *Hawknet Ltd. v. Overseas Shipping Agencies*, 2008 U.S. Dist. LEXIS 35542, at *17-19 (S.D.N.Y. 2008)(Court determined that plaintiff "ha[d] sufficiently alleged alter ego status," but that additional discovery was required in order for plaintiff "to prove, or not, the alter ego relationship [alleged].").

As set forth in Point I (F) above, Plaintiff here has presented sufficient evidence to satisfy its burden to sustain the attachment – namely, that Defendants SHINE, SOLYM, PRIMAL, and AEGIS operate as corporate alter-egos subject to the complete domination and control of Mr. Nikolaos Papalios.   The denial of limited discovery on the alter-ego issue would prejudice

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

Plaintiff, as it would effectively deprive Plaintiff of the opportunity to demonstrate that it has properly brought a *prima facie* admiralty claim against all Defendants and to obtain security for same. The Plaintiff's discovery demands for jurisdictional discovery would include specific limited interrogatories, limited requests for production of documents relating to the corporate structure of the Defendants, and the opportunity to depose Mr. Nikolaos Papalios regarding the structure of his companies and the relationship between the Defendants.

Accordingly, Plaintiff respectfully requests that, should the Court be inclined to vacate or modify the order of attachment, it should be given an opportunity to conduct limited discovery before a decision is taken which may result in the release of the vessel M/V SIDER PINK currently serving as security in this action, and respectfully asks this Honorable Court to set an expedited discovery schedule to determine the issue of alter ego liability on the merits.

### POINT III

### THE QUANTUM OF SECURITY SHOULD NOT BE REDUCED PURSUANT TO RULE E(6)

Finally, Defendant SHINE offers the declaration of Mr. Papalios and a Loan Agreement invoice from BNP Paribas alleging the purported amount of the mortgage which remains outstanding on the M/V SIDER PINK.  *See* Papalios Decl., Dkt.13-1, p. 7-8.   However, the Defendant has not cited to any authority for reducing the quantum of Plaintiff's security under such an analysis.  Supp. Rule E(6) provides in relevant part, "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given. . ." *Id.*

In evaluating a similar application in the Eastern District of Texas, District Judge Clark declined to analyze the Defendant's purported equity in the vessel (and/or the outstanding value of the vessel mortgage).  In *Flame S.A. v. M/V LYNX*, 10-cv-278, Dkt. 80 (E.D. Tex., 2010), the

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

vessel owner submitted declarations and documentation attesting to the fact that the vessel was worth less than the outstanding amount of the mortgage and requested that the Court set a bond at USD 2,000,000.00 on such a basis. *See* Chalos Decl. ¶ 4, Ex. C.  The District Court rejected the argument and instead held that the proper analysis for setting a bond for release of the vessel was under Supplemental Rule E(5).  Judge Clark held:

> If the parties will not stipulate to security, the court shall fix the amount of a special bond under Rule E(5)(a) at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

*Id.*, at *1. (internal citations omitted).  Ultimately, the Court (after hearing testimony as to the value of the vessel from a marine surveyor appointed by the U.S. Marshal Service), held that the fair market value of the vessel was USD 16,500,000.  Accordingly, the Judge entered an Order directing the release of the vessel upon defendant's posting of a surety bond in the amount of USD 16,500,000, plus interest at the rate of 6% per year.  *Id.*, at *4.   Unlike in that matter, there has been no credible evidence before the Court as to the actual value of the vessel, and such a survey for "due appraisement" would have to be undertaken before this Court could enter an Order setting security at an amount below the value of the Plaintiff's claims.

Defendant has made absolutely no showing of "good cause" for the Court to reduce Plaintiff's security demand, instead merely stating, "Plaintiff's demand for in excess of USD $10,000,000 is clearly excessive and must be reduced."  Such a self-serving argument should be rejected by this Honorable Court.  *See Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 532 (S.D.N.Y. 2006) ("[Movant] has not made a showing of good cause to warrant such a reduction. [Movant]'s argument for good cause amounts to little more than a restatement of his argument to

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

vacate the attachment in its entirety. For the reasons stated above, [Movant]'s request to reduce the amount attached is denied.").  It is respectfully submitted that Defendant SHINE's request should similarly be denied.

**POINT IV**

**TO THE EXTENT THE COURT MAY FIND ANY DEFICIENCY(IES) IN PLAINTIFF'S VERIFIED COMPLAINT, PLAINTIFF RESPECTFULLY MOVES FOR LEAVE TO FILE AN AMENDED VERIFIED COMPLAINT AND A STAY OF ANY ORDER TO MODIFY OR VACATE THE ORDER OF ATTACHMENT**

To the extent this Honorable Court may find any deficiency(ies) in Plaintiff's Original Verified Complaint, Plaintiff respectfully moves for leave to file an Amended Verified Complaint prior to the release of the attached security.  Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  Otherwise, a party may amend its pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires.  Fed.R.Civ.P. 15(a).

The standard to be applied in deciding whether an amendment should be permitted under Rule 15(a) is a "lenient" one.  *Schultz v. Wal-Mart Stores, Inc.*, 68 Fed. Appx. 130, 133 (9th Cir. Idaho 2003).  Federal courts, in the specific context of a Rule B attachment action involving alter ego allegations, have previously noted that, generally, "leave to amend should be granted absent evidence of undue delay, bad faith, undue prejudice or futility…"  *World Reach Shipping Ltd. v. Industrial Carriers Inc.*, No. 06 Civ. 3756, 2006 WL 3316828, at *2 (S.D.N.Y. Nov. 9, 2006), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Zucco Partners, LLC v. Digimarc Corp.*, 2009 U.S. App. LEXIS 7025 (9th Cir. Or. Feb. 10, 2009); *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, 2011 U.S. Dist. LEXIS 49054, *3 (D. Or. 2011) (Court permitted amendment of verified complaint following jurisdictional discovery).  Here, there has been no bad

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA  94104
(415) 693-5566

-24-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM

faith or undue delay in seeking to amend the pleading.  Rather, Plaintiff has promptly moved for such relief in response to the Defendant's motion to vacate.

## CONCLUSION

**WHEREFORE**, Plaintiff, RESOURCE MARINE PTE., LTD., respectfully requests that this Court deny Defendant SHINE NAVIGATION LTD.'s motion to vacate Plaintiff's maritime attachment, in its entirety.

DATED:  October 24, 2012                          Respectfully Submitted,

                                                  *Attorneys for Plaintiff*
                                                  **RESOURCE MARINE PTE., LTD.**

                                        By:   /s/ George M. Chalos
                                              George M. Chalos
                                              *Admitted Pro Hac Vice*
                                              CHALOS & CO, P.C.
                                              55 Hamilton Avenue,
                                              Oyster Bay, NY 11771
                                              Telephone:    (516) 714-4300
                                              Telecopier:   (516) 750-9051
                                              Email: gmc@chaloslaw.com

                                              **OF COUNSEL**

                                              Conte C. Cicala (State Bar No. 173554)
                                              Jeanine Steele Tede (State Bar No. 177731)
                                              FLYNN, DELICH & WISE LLP
                                              343 Sansome Street, Suite 540
                                              San Francisco, CA 94104
                                              Telephone:    (415) 693-5566
                                              Telecopier:   (415) 693-0410
                                              Email: contec@fdw-law.com

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

-25-

Memorandum of Law in Opposition to
Defendant's Motion to Vacate
Case No.: 2:12-CV-2554 JAM