JOHN D. GIFFIN, CASB No. 89608
john.giffin@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California 94133
Telephone:  (415) 398-6000
Facsimile:  (415) 981-0136

Attorneys for Defendant Shine Navigation, Ltd.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| RESOURCE MARINE PTE, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> SOLYM CARRIERS (LONDON) LIMITED, f/k/a AEGIS CARRIERS (A.C.E.) LTD., SOLYM CARRIERS LIMITED, PRIMAL SHIPMANAGEMENT INC., SHINE NAVIGATION LTD., <br><br> Defendants. | Case No. 2:12-CV-02554 JAM-GGH <br><br> *Action filed:* October 12, 2012 <br><br> **IN ADMIRALTY** <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANT SHINE NAVIGATION'S MOTION TO VACATE ATTACHMENT** <br><br> Date: October 29, 2012 <br> Time: 10:00 a.m. <br> Courtroom: 6 <br> Judge: John A Mendez |

Defendant SHINE NAVIGATION LTD. ("SHINE") hereby submits its Reply Brief in response to Plaintiff RESOURCE MARINE PTE, LTD. ("Plaintiff") Opposition to Defendant's Motion to Vacate Attachment ("Opposition").

## I. INTRODUCTION

Plaintiff's Opposition demonstrates that Plaintiff cannot carry its burden to establish why the attachment should not be vacated. Plaintiff has not offered any new evidence to demonstrate alter ego liability, instead resubmitting many of the same exhibits attached to its Verified Complaint. Moreover, Plaintiff's evidence that its claim for indemnity was not premature amounts to e-mails requesting security; Plaintiff has not provided a scintilla of evidence that it has ever paid this security or that anyone has

1 ever initiated proceedings to obtain security from Plaintiff. This lack of evidence proves fatal to Plaintiff's argument, because as Plaintiff's counsel himself stated, there is a "plethora of authority" in the Second Circuit that a claim for contingent indemnity is "***not deemed proper***" for Rule B attachment. (See Exhibits to Brief, Dkt. 13-1) (emphasis added.)

Simply put, the evidence demonstrates that Plaintiff attached the M/V SIDER PINK based on a misguided and unsupported theory of alter ego liability in order to ensure that it could recover indemnity for USD $10 million that ***Plaintiff never paid***. Plaintiff attempts to cure these glaring defects by asking the court to permit it to conduct discovery while the SIDER PINK remains attached in Sacramento. However, Plaintiff has already had ample opportunities to conduct such discovery during the London arbitration proceedings that have been ongoing for several months.

In essence, Plaintiff seeks to indefinitely hold the property of another, based on a valueless theory of alter ego, in order to secure itself against the possibility that at some time in the future (nobody knows when, if ever) the Plaintiff may have some contractual liability for an accident which neither Plaintiff nor any of the Defendants caused or contributed to. Plaintiff has attached a ship with no regard to the property rights of the bareboat charterer/purchaser of the ship or the owner of the cargo, whose cargo has been effectively arrested as a result of Plaintiff's misguided and legally unsupported claims for security.

## II. LEGAL ARGUMENT

### A. PLAINTIFF CANNOT DEMONSTRATE ALTER EGO LIABILITY.

#### 1. The SIDER PINK is controlled by Asian Unity Shipping, therefore it is irrelevant whether Mr. Papalios is the alter ego of any of the Defendants.

Asian Unity Shipping Ltd. ("Asian") has a 30% interest in the SIDER PINK and is in the process of purchasing it. (Declaration of Aristeidis Sotiropoulos ("Sotiropoulos Decl.") *filed concurrently herewith*, at ¶ 7). In fact, Asian has been the bareboat charterer and manager of the vessel since June 21, 2010. (Id. at ¶ 2).

1 Accordingly, Asian has full possession of the vessel and the absolute disposal for all
2 purposes. (Id. at ¶ 4). SHINE has no control over the vessel, nor does Mr. Papalios. (Id.
3 at ¶ 5). Mr. Papalios has no interest in Asian. (Id. at ¶ 6). Because Mr. Papalios has no
4 control or possession of the SIDER PINK, an alter ego analysis is irrelevant.

### 2. Plaintiff's alter ego claim must fail as a matter of law.

In order to satisfy its *prima facie* burden of alter ego liability, a Plaintiff must demonstrate (1) a disregard of corporate formalities; or (2) that injustice would result from recognizing separate corporate entities. Chan v. Society Expeditions, 123 F.3d 1287, 1294 (9th Cir. 1997). For the reasons set forth below, Plaintiff has failed to satisfy either prong of this test. Therefore, its alter ego theory of liability must fail as a matter of law.

#### a) Plaintiff cannot demonstrate a disregard of corporate formalities.

In order to demonstrate disregard of corporate formalities, the Plaintiff must demonstrate more than "just control." M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1489 (9th Cir. 1983). Bare assertions of alter ego status, or "[m]ere common ownership," are insufficient. KPI Bridge Oil Singapore PTE LTD. V. Berlain Laju Tanker TBK PT, 2012 U.S. Dist. LEXIS 37751, at *6 (N.D. Cal. Mar. 20, 2012). Courts sitting in admiralty may pierce the corporate veil only where "the controlling corporate entity exercises total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." Chan, 123 F.3d at 1294 (finding no alter ego liability because, aside from common ownership, there was insufficient evidence of a shared corporate existence or common scheme to perpetrate fraud).

As Plaintiff noted in its Opposition and Defendant in its Motion to Vacate, courts may weigh a variety of factors in this analysis and no one factor is dispositive. It is clear, however, that a plaintiff must demonstrate more than common ownership. See Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 (Cal. Ct. App. 1992) (the fact that defendant "dominated and controlled" the corporation was "not significant in

- 3 -     KYL_SF574720
REPLY BRIEF IN SUPPORT OF DEFENDANT SHINE NAVIGATION'S MOTION TO VACATE ATTACHMENT- Case No. 2:12-CV-02554

isolation").

Here, Plaintiff has offered evidence that at best indicates common ownership. Specifically, Plaintiff presented evidence that: 1) Mr. Papalios is the only shareholder of AEGIS; 2) Mr. Papalios is the sole shareholder of SOLYM; 3) Mr. Papalios is the sole director and owner of PRIMAL; 4) Mr. Papalios is the director of SHINE; 5) SHINE's only asset is the Sider Pink; 6) SOLYM and PRIMAL listed the same address on their respective letterheads in one specific transaction; 7) SHINE's correspondences regarding the SIDER PINK mortgage are sent to PRIMAL's offices; and 8) SOLYM and PRIMAL have guaranteed AEGIS's performance in two transactions.

While these facts may suggest common ownership, they do not demonstrate that Mr. Papalios exercises total domination of the Defendants, to the extent that the Defendants manifest no separate corporate interests of their own. Defendants are wholly separate entities, and they behave as such. They do not engage in transactions that solely benefit one party over the other, nor do they ignore legal formalities or comingle assets. In fact, all of the Defendants have separate addresses, employees, tax returns, and bank accounts. (Declarations of Christos Roussos ("Roussos Decl.") at ¶¶ 7-8, and George Pantelidis ("Pantelidis Decl.") at ¶ 6, *filed concurrently herewith*). Therefore, Plaintiff cannot demonstrate alter ego liability.

### b) Plaintiff cannot show an inequitable result.

Courts have found that injustice would result from failing to pierce the corporate veil where the defendant uses its alter ego to perpetrate a fraud, or intends to circumvent contractual obligations. See Chan,123 F.3d at 1294; M/V American Queen, 708 F.2d at 1489.  While undercapitalization is a factor in this analysis, "California courts have rejected the view that the potential difficulty a Plaintiff faces collecting a judgment is an inequitable circumstance that warrants application of the alter ego doctrine." Smith v. Simmons, 638 F. Supp. 2d 1180, 1192 (E.D. Cal. 2009).  Therefore, "it is not sufficient merely to show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an

inequitable result." Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 (Cal. Ct. App. 1992).  Here, Plaintiff cannot demonstrate that an inequitable result will occur if the veil is not pierced for at least the following two reasons.

First, Plaintiff has not, and cannot, offer any evidence that Mr. Papalios used any companies in which he may have an interest to perpetrate any type of fraud. The hire for the subcharter of the M/V BALTIC LEOPARD has not been paid because there is an arbitration ongoing in London on that issue.  (Verified Complaint ("V.C.") ¶ 31; Pantelidis Decl. ¶ 9). Similarly, Defendants SOLYM and AEGIS have not indemnified Plaintiff for the damages to the BALTIC LEOPARD and the dock in Nigeria because ***Plaintiff never paid any security for those damages***. In fact, Plaintiff has not even initiated arbitration proceedings against any Defendant to collect the $10 million security.  (Pantelidis Decl. ¶¶ 10, 11). Simply put, neither Defendants nor Mr. Papalios have acted in bad faith.

Second, Plaintiff has admitted that it sought to attach the SIDER PINK to ensure that it would not have difficulty collecting a judgment in the London arbitration. (V.C. ¶ 32; Murphy Decl. to Plaintiff's Opposition, at ¶ 29).  However, the potential difficulty a Plaintiff faces collecting a judgment is not an inequitable circumstance that warrants application of the alter ego doctrine.  Smith, 638 F. Supp. at 1192.

Therefore, allowing Plaintiff to prevail on its alter ego theory would result in an injustice.  Plaintiff has attached a ship in another country based on events concerning a different ship more than one year ago that did not involve Mr. Papalios or Defendants PRIMAL and SHINE.

### c)   **Plaintiff cannot cure the defects because the facts are clear.**

Plaintiff argues in its Opposition that it should be permitted to conduct discovery. However, arbitration proceedings have been ongoing in London – a much more convenient forum for the parties – for several months to settle the unpaid charter hire claim, providing Plaintiff ample opportunities to conduct discovery. Further, Plaintiff has not even attempted to initiate arbitration for the indemnity claim. After

1 foregoing these opportunities for discovery, Plaintiff should not be permitted to conduct
2 discovery at its leisure *after* attaching the SIDER PINK.

Moreover, any discovery would be futile, because the facts are clear. The parties have already offered evidence of Defendants' corporate registration, the relevant charter agreements, mortgages, other contracts related to this matter, and even Defendants' addresses. Further discovery would only serve to prejudice Defendants by unnecessarily prolonging the attachment. Plaintiff has not met its Rule E(4)(f) burden of demonstrating why the attachment should not be vacated, and additional discovery should not be permitted.

### B. EVEN IF PLAINTIFF COULD DEMONSTRATE ALTER EGO LIABILITY, THE ATTACHMENT WAS IMPROPER.

Pursuant to Rule B of the Supplemental Rules of Admiralty, a Plaintiff seeking to obtain an order of attachment must satisfy four conditions: "(1) a valid prima facie admiralty claim against defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir. 2010); FED. R. CIV. P., SUPP. R. B. A district court must vacate an attachment if the Plaintiff fails to sustain the burden of showing that he has satisfied the requirements of Rule B. Equatorial, 591 F.3d at 1210. Importantly, where a verified complaint is legally insufficient *at the time of attachment*, the attachment is void and subsequent attempts to cure the defects are fruitless. Equatorial, 591 F.3d at 1211.

#### 1. Plaintiff failed to state a valid prima facie claim against Defendants.

As stated in SHINE's moving papers, it is well established under California law that a cause of action for equitable indemnity arises only when the indemnitee actually incurs a loss by payment of the underlying claim or judgment. See U.S. Cold Storage v. Matson Navigation Co., 162 Cal. App. 3d 1228, 1231 (1984).  A debt which is uncertain and contingent in the sense that it may never become due is not subject to garnishment. Javorek v. Superior Court of Monterey County, 17 Cal. 3d 629, 640 (1976).

- 6 -    KYL_SF574720
REPLY BRIEF IN SUPPORT OF DEFENDANT SHINE NAVIGATION'S MOTION TO VACATE ATTACHMENT- Case No. 2:12-CV-02554

Federal law also holds that a contingent indemnity claim is unripe for purposes of Rule B attachment. In a leading case directly on point, the Second Circuit affirmed a judgment vacating an order of maritime attachment. Bottiglieri Di Navigazione v. Tradeline, 2008 U.S. App. LEXIS 20028 (2d Cir. 2008). The Court held that the plaintiff had failed to state a prima facie admiralty claim for indemnity because, under English law, plaintiff's claim was not ripe where the plaintiff had not yet incurred liability to a third party. Id. at *37. The Second Circuit adopted the reasoning of the District Court's "thorough opinion." Id.[1]

In vacating the order of attachment, the District Court noted that the vessel owner asserted claims against the plaintiff for breach of their charter party in arbitration; the plaintiff then asserted claims against the defendant. Bottiglieri Di Navigazione v. Tradeline, 472 F. Supp. 2d 588, 589 (S.D.N.Y. 2007.) Here, Plaintiff has not been sued in any action (in arbitration or any other forum), making Plaintiff's indemnity claim even more speculative than in Bottiglieri. Similar to this case, it was undisputed in Bottiglieri that there had been no settlement in the underlying dispute between the Plaintiff and vessel owner, no finding of liability and no award rendered against the Plaintiff. Id.

In a meritless attempt to distinguish Bottiglieri, Plaintiff argues that this entire action is not one for indemnity, but seeks obtain security for a breach of the underlying sub-charter party agreement. This was the same argument that was rejected in Bottiglieri. The alleged damages Plaintiff ***has allegedly incurred*** associated with the alleged breach of the underlying sub-charter party agreement (unpaid hire claim) are **limited** to $232,694.18. (See V.C., ¶ 17.) In contrast, the bulk of the alleged damages associated with Plaintiff's unsafe berth claim ***have not yet been incurred***.

---

[1] Several courts have followed the Bottiglieri decision. See CPM Corp. v. Prominent Shipping PTE, Ltd., 2009 U.S. Dist. LEXIS 105733, 2010 A.M.C. 503 (S.D.N.Y. 2009); Royal Gold Inv., Inc. v. Louis Dreyfus Commodities Brasil S.A., 2009 U.S. Dist. LEXIS 57870 (S.D.N.Y. Apr. 23, 2009.)

1  Indeed, this indemnity claim is entirely dependent upon whether Plaintiff may at some
2  point in the future need to respond to vessels' owners demand to Plaintiff for
3  $10,000,000 in security.   Just as in <u>Bottiglieri</u>, the allegations of Plaintiff's Complaint
4  trace the bulk of the monetary claim made against SHINE to the damages claimed by
5  the vessel owner. (<u>See</u> Verified Complaint, ¶ 29; <u>Bottiglieri,</u> 472 F. Supp. 2d at 591.)
6  Accordingly, Plaintiff's claims are not ripe and Plaintiff cannot establish a *prima facie*
7  admiralty claim.
8          In a last ditch effort to avoid vacatur of the attachment order, Plaintiff's
9  Opposition cites a number of district court cases purportedly for the proposition that this
10 Court has the discretion to maintain this admittedly premature attachment.  (<u>See</u>
11 Plaintiff's Opposition, p. 8 -10.)   However, each of the district court cases Plaintiff cites
12 were decided **before** the Second Circuit's decision in <u>Bottiglieri.</u>  In <u>Bottiglieri</u>, the Court
13 noted that while there is authority suggesting that district courts have discretion to
14 uphold an attachment order over an unripe claim, the scope of the discretion under Rule
15 B "has been significantly narrowed" and "it is unclear whether any such discretion is
16 available to the Court today." <u>Bottiglieri</u>, 472 F. Supp. 2d at 591.
17         Indeed, in February **of this year**, Plaintiff's counsel advised two of the
18 entities he sued here (AEGIS and SOLYM) that there is a "plethora of authority" in the
19 Second Circuit that a claim for contingent indemnity is "**not deemed proper**" for Rule B
20 attachment. (<u>See</u> Exhibits to Brief, Dkt. 13-1) (emphasis added.)  Plaintiff's counsel
21 further stated:  "The cases in which contingent indemnity claims have been evaluated
22 consistently note that if a party's claim for indemnity has not yet ripened because that
23 party has not yet incurred liability to the third party in question (i.e. in this case, the
24 disponent owners or registered owners of the vessel), that party does not have a prima
25 facie claim and, as such, does not satisfy the requirements of Rule B."  (<u>Id.</u>)  Plaintiff's
26 counsel did say that it was not clear whether Courts outside the Second Circuit would
27 come to the same conclusion because both maritime practitioners and District Court
28 judges outside of New York "are far less experienced with the nuances of Rule B

REPLY BRIEF IN SUPPORT OF DEFENDANT SHINE NAVIGATION'S MOTION TO
VACATE ATTACHMENT- Case No. 2:12-CV-02554

attachment practices." (Id.) Plaintiff's counsel does not cite any recent authority or specify any facts warranting his stunning reversal of opinion.[2]

### 2. Plaintiff offered no evidence that Mr. Nicholaos Papalios could not be found within the District.

Plaintiff's Rule B claim also fails because it has not demonstrated that Mr. Papalios cannot be found within this District. In its Verified Complaint, Plaintiff alleges that none of the Defendants are present or can be found in the District. (V.C. ¶ 50; Exhibit 13 to V.C.). However, Plaintiff made no representation with regard to whether Mr. Papalios could be found within the District. Given that Mr. Papalios' alleged ownership of the SIDER PINK formed the basis of Plaintiff's attachment, this omission proves fatal to Plaintiff's Rule B claim. Plaintiff cannot seek to cure this deficiency, because the verified complaint must be legally sufficient at the time of attachment.

### C. IN THE ALTERNATIVE, THE QUANTUM OF SUBSTITUTE SECURITY MUST BE REDUCED.

In the event the Court denies Defendant's Motion to Vacate, Defendant requests in the alternative that security of $232,694.18 be set as substitute security. Fed. R. Civ. P. Supp. R. E(6) (court's statutory discretion to reduce bond); *see also Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 109-10 (2d Cir. 2009) (discussing equitable discretion). Plaintiff's sole argument against Defendant's request is its unfounded conclusion that "Defendant has made absolutely no showing of 'good cause' for the Court to reduce Plaintiff's security demand . . ." *See* Opposition at p. 23.[3] Contrary to this assertion, Defendant has demonstrated

---

[2] Mr. Chalos argues that this opinion was privileged. However, in California, "[t]he 'holder of the privilege,' i.e., the person entitled to claim it, is the 'client.' In other words, the privilege belongs to the client and not the attorney." Benge v. Superior Court, 131 Cal. App. 3d 336, 344 (Cal. App. 1982). Therefore, Mr. Chalos' clients were free to waive the privilege by volunteering to share the opinion with Defendant's counsel particularly when, after giving them his opinion, Mr. Chalos went to the other side and sued them on grounds contrary to his opinion.

[3] In support of its Opposition, Plaintiff quotes an unpublished opinion by Judge Ron Clark in the Eastern District of Texas. *See* Opposition at pp. 22-23 (quoting *Flame S.A. v. M/V LYNX*, 10-cv-278, Dkt. 80 (E.D. Tex., 2010). Plaintiff is correct that the defendant in *M/V LYNX* requested that the court set a bond as substitute security in an amount not to exceed its equity interest in the vessel. In Judge Clark's Order, he referenced only the security valuation proscribed in Supplemental Rule E(5). *See* Opposition at p. 23; *see also* Fed. R. Civ. P. Supp. R. E(5) (bond set at (i) twice amount of Plaintiff's claim or (ii) value of property on due appraisement, whichever smaller). However, Judge Clark did not address in his Opinion the

that its equity interest in the M/V SIDER PINK is limited to $1.8 million. The remainder interest is owned by BNP Paribas bank, as mortgagee of the M/V SIDER PINK, and Asian. (Sotiropoulos Decl. ¶ 7). A bond set as substitute security in the amount of $10 million, as requested by Plaintiff, would be tantamount to requiring non-party BNP Paribas to post a security, which is not a tenable result.

Plaintiff's only claim for value under Supplemental Rule B is the *ship owner's* interest in the ship – not the ship itself. (Unlike in a scenario involving a vessel arrest, Plaintiff here does not have a lien on the M/V SIDER PINK.) Put differently, if the M/V SIDER PINK were sold, BNP Paribas' mortgage would take priority and be satisfied from the initial proceeds of the sale. *Cf.* Ship Mortgage Act, 46 U.S.C. § 31326 (discussing priority of preferred mortgage liens). Plaintiff's only claim would be to the remaining proceeds after satisfaction of the mortgage – or $1.8 million.

### III. LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should be denied because Plaintiff cannot cure the defects that existed at the time of attachment, and therefore, the motion to vacate must be granted. Equatorial, 591 F.3d at 1210. Moreover, the defects are not curable. All credible evidence clearly demonstrates that Defendants are not alter egos of one another, and that Plaintiff's claim for indemnity is premature.

DATED:  October 26, 2012           /s/ John Giffin
                                   JOHN D. GIFFIN
                                   KEESAL, YOUNG & LOGAN

---

defendant's argument in favor of reduction of the security amount based upon liens on the vessel. Further, unlike the present case, *M/V LYNX* involved a Rule B attachment *and a Rule E arrest*. The vessel arrest effectively allowed the Plaintiff in that case to attach the vessel itself (as opposed to the vessel owner's interest in the vessel).