UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE MARINE PTE, LTD., <br><br>   Plaintiff, <br><br>   v. <br><br> SOLYM CARRIERS (LONDON) LIMITED, f/k/a AEGIS CARRIERS (A.C.E.) LTD, et al., <br><br>   Defendants. | No.  2:12-cv-2554-JAM-GGH <br><br> **ORDER HOLDING DECISION IN ABEYANCE PENDING LIMITED DISCOVERY** |

   This admiralty matter arises from the Rule B attachment of the M/V Sider Pink, a shipping vessel owned by Defendant Shine Navigation LTD ("Shine"), by Plaintiff Resource Marine PTE, LTD ("Plaintiff").  Magistrate Judge Hollows granted Plaintiff's motion to attach the M/V Sider Pink on October 12, 2012 (Doc. #7).  Shine then moved the Court to vacate the attachment, and a hearing on that motion was held on October 29, 2012.  The Court set the amount of substitute security at $232,694.18 and delayed ruling on the motion to vacate the attachment pending further briefing by the parties.  After reviewing the additional briefing (Doc. ##33-34), the Court holds that Plaintiff is permitted to

1

conduct limited discovery in accordance with the following order.

## I. BACKGROUND

This matter originated when the M/V Baltic Leopard, a vessel under Plaintiff's control, was subchartered to Defendant Aegis Carriers ("Aegis") for a period of 11.5 months. The charter agreement was guaranteed by Defendant Solym Carriers ("Solym"). Plaintiff alleges that Aegis and Solym breached the charter agreement by returning the M/V Baltic Leopard before the 11.5 month period expired, giving rise to alleged damages of $232,694.18 (the "unpaid hire claim"). Plaintiff also alleges that the M/V Baltic Leopard was disturbed by the wake from a passing vessel in Port Harcourt, Nigeria on July 19, 2011 when it was under Aegis's control. Plaintiff claims that the ship surged forward and caused damage to the concrete terminal and the vessel itself. The Nigerian terminal claimed damages against the owner of the M/V Baltic Leopard, an entity named BLL, in excess of $10,000,000 (the "unsafe berth claim"). BLL notified Plaintiff of the claim, but has yet to formally demand security from Plaintiff. Plaintiff instituted arbitration proceedings against Solym and Aegis in London for the unpaid hire claim, but did not include a claim for unsafe berth. Shine is not a party to the London proceedings.

As a result of damages arising from Plaintiff's unpaid hire and unsafe berth claims, Plaintiff seeks security from Defendants Primal Shimpmanagement, Inc. ("Primal") and Shine. Plaintiff alleges that Primal is a commercial operator for vessels beneficially owned by Nikolaos Papalios, including Shine.

Plaintiff therefore contends that Primal and Shine are corporate alter egos for Aegis and Solym and that all four entities are controlled by Mr. Papalios.  Plaintiff contends that Shine's vessel, the M/V Sider Pink, is the proper subject of maritime attachment because it can rightfully serve as security for the unpaid hire and the unpaid berth claims.  Plaintiff seeks limited discovery on its alter ego theory before the Court resolves Shine's motion to vacate the attachment on the M/V Sider Pink.

At the October 29, 2012 hearing, the Court reduced the amount of substitute security requested by Plaintiff from $10,232,694.18 to $232,694.18.  The Court based its holding on the speculative nature of the unsafe berth claim.  Plaintiff has not received a formal demand from BLL for damage caused by the M/V Baltic Leopard, meaning that Plaintiff may never incur liability for damage to the Nigerian Port.  Accordingly, the Court held that Shine was not required to post security for the unsafe berth claim and reduced the substitute security to the amount claimed for the unpaid hire claim. After the October 29, 2012 hearing, Shine posted substitute security and the M/V Sider Pink left the port in West Sacramento.[1]

The Court also requested additional briefing on whether discovery is available in the London proceedings between Plaintiff, Aegis, and Solym because the attachment of the M/V Sider Pink may be unnecessary if Plaintiff is entitled to discovery on its alter ego theory in London.

---

[1] The security posted by Shine serves as a legal substitute for the physical presence of the M/V Sider Pink.  Despite the vessel's departure, the ultimate issue remains whether or not the attachment of the M/V Sider Pink is maintainable.

Federal jurisdiction exists over this admiralty action pursuant to 28 U.S.C. § 1333.

## II. OPINION

In maritime attachment proceedings, jurisdiction over the defendant is quasi in rem based on attachment of property in order to secure a claim brought by the plaintiff against the defendant. Orders for maritime attachment are governed by Federal Rule of Civil Procedure B found in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule B attachments are generally granted on an ex parte basis through a verified complaint supported by affidavit. Fed. R. Civ. P. B(1). A defendant may challenge maritime attachment through Rule E(4)(f), which entitles the owner of the attached property to a prompt hearing at which the plaintiff bears the burden to show why the attachment should not be vacated. A maritime attachment is proper if the following conditions are met: "(1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir. 2010). At a Rule E(4)(f) hearing, the plaintiff has the burden of showing reasonable grounds for the attachment, a standard comparable to the probable cause standard. KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT ("KPI"), No. C 12-00710 WHA, 2012 U.S. Dist. LEXIS 37751, at *5 (N.D. Cal. Mar. 20, 2012).

In this case, the Court held at the October 29, 2012 hearing that Plaintiff stated a prima facie unpaid hire claim against Aegis and Solym. It is undisputed that those defendants cannot be found within this district. Neither party has raised a statutory or maritime bar to the attachment. Accordingly, the only outstanding element is the third element, which requires Plaintiff to show that property of the defendants, Aegis and Solym, are found within the district.

The M/V Sider Pink is undisputedly owned by Shine, not Aegis or Solym. Plaintiff's verified complaint alleges that Shine, Aegis, Primal, and Solym are alter egos of one another as companies owned and controlled by Nikolaos Papalios such that they are not legally distinct entities. Plaintiff alleges that Primal and Solym regularly guarantee the performance and obligation of Aegis. Shine owns the M/V Sider Pink, but the terms of its mortgage identify Primal as the commercial manager of the vessel. Additionally, Plaintiff alleges that the mortgage on the M/V Sider Pink identifies Primal as the corporate guarantor of Shine and Mr. Papalios as the personal guarantor. Plaintiff therefore contends that the M/V Sider Pink can be properly attached as security for its claim against Aegis and Solym. Plaintiff argues that these facts, at the least, show that it is entitled to limited jurisdictional discovery on the alter ego issue. Shine responds to the allegations in the complaint by arguing that Plaintiff has not and cannot meet its burden to show that Shine, Primal, Aegis, and Solym should be regarded as anything less than separate corporate entities. Shine argues that the factors examined by federal courts to

...

determine alter ego status are not present here, and that the attachment should be vacated on that basis.

The Ninth Circuit has not enumerated specific factors that must be present to show a corporate alter ego relationship, but it has held that piercing the corporate veil "requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997) (quotations omitted). Common ownership is not sufficient to pierce the veil between corporations, and bare assertions of alter ego status do not warrant attachment. Stevedoring Servs. of Am. v. Ancora Transp., N.V., 59 F.3d 879, 883 (9th Cir. 1995).

At this stage, it is unlikely that Plaintiff has alleged facts sufficient to show total domination by one of the corporate defendants over the others such that Plaintiff's alter ego theory provides a jurisdictional basis for the ongoing attachment of Shine's substitute security. A lack of supporting facts standing alone does not necessarily mean that the attachment must be immediately vacated because the Ninth Circuit requires limited jurisdictional discovery where it might demonstrate facts sufficient to show a basis for jurisdiction. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003). At least one court has determined that this rule applies to maritime attachment cases where an alter ego theory is alleged, and further discovery might yield facts sufficient to show the theory's validity. KPI, 2012 U.S. Dist.

LEXIS 37751, at *11.

In the present matter, Plaintiff has alleged facts with supporting evidence sufficient to show that further jurisdictional discovery may well produce evidence sufficient to justify attachment of Shine's substitute security.  The Court also reviewed the parties' briefing on the discovery available in the London proceedings on the unpaid hire claim.  Shine makes a somewhat persuasive argument that Plaintiff never asked for discovery on its alter ego theory, so it should not now be allowed to proceed with such discovery in this district.  Shine is correct that this case would be much cleaner if Plaintiff had sought and was denied discovery in London, making discovery in this district more clearly necessary.  Shine is not, however, a party to the London arbitration, and it is at least excusable that Plaintiff did not seek discovery from a non-party in the London proceeding.  The Court therefore finds that it would be inequitable to deny jurisdictional discovery in this district based on what did or did not occur in the London proceeding.  Accordingly, the Court finds that limited jurisdictional discovery may lead to facts constituting a jurisdictional basis for attaching Shine's property.  Limited discovery is therefore proper.

### III. ORDER

For the foregoing reasons, the Court reserves decision on Shine's motion to vacate the attachment and dismiss Plaintiff's complaint.  Plaintiff may engage in the following jurisdictional discovery, which must be narrowly addressed to Plaintiff's alter

ego theory:

1. Ten document requests;

2. Twenty interrogatories; and

3. Four depositions not to last longer than 7 hours each.

The parties must submit a joint discovery and briefing schedule on the alter ego issue to the Court within 20 days.  At the close of discovery, Plaintiff may submit a 20 page brief in support of its position, and Defendant may respond with a 20 page brief. Neither party may file a reply.  The attachment will then be maintained or vacated on the papers unless a hearing is determined to be necessary.

IT IS SO ORDERED.

Dated: December 18, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE